**AMERICAN NATIONAL INSURANCE COMPANY OF GALVESTON, TEXAS and W. E. Greer, Appellants,**

v.

**Leo E. MURRAY et al., Appellees.**

**No. 23077.**

United States Court of Appeals
Fifth Circuit.

Sept. 19, 1967.

Rehearing Denied Nov. 14, 1967.

William F. Goodman, Jr., Elizabeth W. Grayson, Jackson, Miss., for appellants, Dibrell, Dibrell & Greer, Galveston, Tex., Watkins & Eager, Jackson, Miss., of counsel.

Erskine W. Wells, Vardaman S. Dunn, Henry E. Barksdale, James Leon Young, Jackson, Miss., for appellees, Young & Young, Wells, Thomas & Wells, Lipscomb, Barksdale & Steen, Cox, Dunn & Clark, Jackson, Miss., of counsel.

Before RIVES, GEWIN and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

The dispositive issue common to the appellants-plaintiffs and to the appellees-defendants is whether a payment of $68,659.94 to Richard C. Rogers and Company (hereafter Rogers), agent for American National Insurance Company of Galveston, Texas (hereafter American), was binding upon American notwithstanding its lack of knowledge of the prepayment and the fact that Rogers embezzled the money. Upon a letter opinion answering that issue in the affirmative, the district court held that American's promissory note and the deed of trust and assignment of rents securing

the note had been satisfied and discharged. The court, therefore, entered summary judgments in favor of all of the defendants excepting only Rogers, himself, and the bank on which the payment check had been drawn. We hold that the moving defendants were not entitled to judgment as a matter of law, because there remained genuine issues as to material facts. Rule 56(c), Fed.R.Civ.P.

American has been making loans in Mississippi since 1928. It has operated in the State through Rogers as agent, who solicited applications and then submitted them to American's offices for approval. In some instances, Rogers collected payments for American and remitted these less his own commission to American. There was no specific oral or written agreement between American and Rogers and no check of Rogers' books was ever made by American.

On June 24, 1959, a loan to Zurich Building, Inc. (hereafter Zurich) was made by American; Rogers took the application, but submitted it to American's office in Galveston, Texas, where the transaction was approved. The debt, evidenced by a note, was secured by a deed of trust on Zurich's realty in Jackson, Mississippi, and an assignment of rents and income from the property. Although the note was payable in monthly installments, it contained a typed provision, as follows:

"The Makers reserve (a) the privilege of paying, in addition to the installments above provided, the sum or sums equal to 20% of the original principal of this note during any calendar year, prior to the expiration of three years from date hereof, which privilege shall be noncumulative; (b) the privilege of paying amounts in excess of 20% provided a premium of 2% is paid on such excess payments; (c) the privilege of making payments in addition to the regular installments after expiration of three years from date hereof without premium." [1]

1. This provision permitting prepayment of the indebtedness was not included in the deed of trust, which was recorded, or in the assignment of rents.

In addition, another paragraph provided:

"All installments of principal and interest are payable * * * at the office of the payee in Jackson, Mississippi, or at such other place as the holder hereof may designate in writing."

The note provided that it was to be construed according to the laws of Mississippi.

Zurich received a letter dated August 3, 1959, and signed "G. K." which indicated that payments were to be made to Rogers. The authority conferred on Rogers, primarily by this letter, constitutes the principal issue of this case. The letter read as follows:

"AMERICAN NATIONAL INSURANCE CO.
Moody Avenue at Market Street

Galveston, Texas
August 3, 1959

"Zurich Building, Inc.
c/o Richard C. Rogers Company
P. O. Box 1653
Jackson, 5, Mississippi

Loan No. 12462

"The number in caption has been assigned to your loan, with the amount of monthly payments and the due date being as follows:

| Amount of Payment | Due Date |
| --- | --- |
| $664.00 | August 1, 1959 and monthly thereafter. |

"The loan will be serviced by
Richard C. Rogers & Company
P. O. Box 1653
Jackson 5, Mississippi

"Unless you are otherwise notified by this company, payments should be made to the above-named representative, and such payment will constitute payment to American National Insurance Company.

"We are confident you will find them cooperative at all times, and we trust the relationship will be mutually satisfactory.

"Very truly yours,
/s/ G.K.
Mortgage Loan Department."

---

On August 1, before receiving this letter, Zurich had sent the first monthly payment to American's office in Galveston. American returned Zurich's check with a letter dated August 11 which directed Zurich to "send all remittances and correspondence concerning this loan to Richard C. Rogers Company. I am sure you will find them most cooperative and can handle the loan in a very satisfactory manner." In October 1962 First Federal Savings and Loan Association (hereafter First Federal), in order to permit it to make a new loan on the property, attempted to prepay the entire balance. It first wrote to Rogers and obtained a letter giving the balance due on the loan. A number of documents were

turned over to First Federal, including the August 3 letter. The refinancing was handled by First Federal's attorney, who relied on the August 3 letter and did not see the August 11 letter. First Federal's attorney had a check for $68,659.94 issued jointly to "Leo E. Murray and Richard C. Rogers and Company, Agent for American National Insurance Co. of Galveston, Texas." Murray endorsed the check and personally delivered it to Rogers. Rogers wrote and acknowledged receipt of the check by letter to First Federal's attorney, as follows:

"This will acknowledge receipt of your check No. 19539, in the amount of $68,659.94 and dated October 1, 1962. This will also acknowledge receipt of an 'Authority to Cancel' form, which we will have properly executed and returned to you within two weeks.

"We will forward the cancelled note and deed of trust directly to Mr. Murray for his records.

"If you need anything further from us in connection with this matter, please let us know.

"Sincerely yours,

/s/ Richard C. Rogers
Richard C. Rogers"

Rogers deposited the check in an "Escrow Account" in the First National Bank, Jackson, Mississippi. The check was not endorsed as "Agent for American Insurance Company." The cancelled check was returned, but no inquiry was made concerning the endorsement. The "Authority to Cancel" form was never returned to First Federal's attorney nor were the cancelled note and deed of trust forwarded to Murray as Rogers' letter had promised. Between October and December the attorney made several inquiries of Rogers and became "anxious." He did not, however, contact American directly.

On March 15, 1963, a cancellation appeared "of record," though the original has not been introduced in evidence. This, it is now clear, was a forgery, did not contain the seal of American, and was not accompanied by a resolution of American's Board of Directors. The attorney did not check the record of the cancellation himself, but had another individual, not an attorney, check it. The note and deed of trust remain undisturbed in American's custody.

During most of this period, Rogers had a significant amount of money in his bank accounts. Had American received notice of any prepayment of the loan, it is likely that all or some of the embezzled money could have been recovered from Rogers.

In August of 1963, American noticed that Zurich was three installments behind in its payments. Rogers, however, had called Murray and told him that there was a snag in the accounting machines and not to worry about any demand for payment which might arrive. Murray left town and instructed that if a letter from American arrived, that it be delivered to Rogers. This was done, and Rogers paid American the amount of the delinquent installments.

In late December 1963, American sent a letter to Zurich asking for confirmation of the balance shown on its books. Moore, one of the owners of Zurich, said that the letter was never received. Not until February 1964 did American learn of the prepayment made to Rogers in October 1962.[2]

I.

The district court erred in holding that there was no genuine issue of fact, but that payment was validly made to an agent of American who had authority to receive prepayment for the entire amount of the remaining indebtedness.

Among other evidence of a lack of any such authority was an affidavit of American's executive officer that Rogers' authority was limited to submitting applications for loans to be approved or disapproved by American. On some but not all of such approved loans, Rogers acted as servicing agent by collecting monthly payments and transmitting them to

---

2. That information came from a title insurance company rather than from the defendants.

American. American does not usually grant prepayment privileges. Its form promissory note contains no such provision. In this instance, the privilege was typed into the form note. The affidavit continued:

"The loan to Zurich Building, Inc. was one loan where Richard C. Rogers or Richard C. Rogers d/b/a Richard C. Rogers & Company was authorized to collect the monthly installments and to remit the same to Plaintiff. He had no authority whatsoever from American National to collect any prepayment of principal. In fact while Plaintiff was at that time operating in 35 states no correspondent in any state was authorized by it to collect in his or its own name prepayments of principal of a loan. There are patent reasons why a company making loans would not and could not authorize a servicing agent to collect in his or its own name substantial prepayments of the balance of principal due. The authorization of collection of monthly installments was relatively safe in that such collections involved a relatively small amount of money, the due date of the installment was known to the company and therefore the date the remittance was due to the company by the servicing agent was known to the company and if the same were not received immediately inquiry and/or check could be made and the loan either foreclosed or if the payments had been made and the agent not remitted the agent could be immediately required, by legal process, if necessary, to make the remittance. On the other hand, in the case of an option to prepay the company might have no knowledge or notice of any desire to exercise said option and the payments would be in a substantial amount beyond the amounts with which the company would be willing to trust to a servicing agent and unless informed by the borrower the company would have no notice, save that given by the servicing agent, if any, of such attempted prepayment and no opportunity to check thereon or thereasto (sic).

"Affiant has read the affidavits attached to the Motion of these Defendants for Summary Judgment and denies that the custom and practices referred to therein is (sic) any general custom and practice where borrowers are prepaying loans out of a new loan and that such exceptional practice is strictly limited to instances where: (1) the servicing agent actually made the loan and was the payee in the note and Deed of Trust, and (2) the assignor of the note and Deed of Trust had substantial financial responsibility and large corporate assets to the knowledge of the borrower or new lender, and (3) the assignor of the note and Deed of Trust had an actual contract with the holder of the note and Deed of Trust authorizing it to collect prepayment of large amounts of principal which said contract could be and was exhibited to borrowers or their attorneys upon request and the existence of which contract was known to and relied on by borrowers or their attorneys. None of these facts are present here. If payments are made by borrowers or new lenders by check made payable only to a servicing agent without immediate delivery of the note and cancellation of the Deed of Trust, such borrower or new lender is himself relying entirely on the credit and financial standing of the servicing agent as his own agent.

"That as a matter of fact there is and was not to the knowledge of Plaintiff any general custom of consummating prepayment of loans in the manner set out in the affidavits referred to.

* * *"

There were other supporting affidavits. These affidavits are not negatived by the written evidences of Rogers' authority, that is by the letter of August 3, 1959, as supplemented by the letter of August 11, 1959. The payments to which the letters specifically referred were identified both by amount and by due date. They were the monthly payments of $664.00. True, the letter of August 3. stated that "The loan will be serviced

by" Rogers. Whether "servicing" included acceptance of a prepayment of the entire balance of a loan was the subject of disputing affidavits. True also, the letter of August 11 directed that "you should send all remittances and correspondence concerning this loan to Richard C. Rogers Company." The word "all" as used in that letter must be construed in connection with the specific reference in the letter of August 3 to the monthly payments of $664.00. In that light, it cannot be said as a matter of law that "all" referred to the prepayment privilege or included any other than the regular monthly payments.

Under the facts disclosed by the testimony of the paying agent, First Federal's attorney, candidly admitting his reliance on the letter of August 3, 1959, and that he had not seen the August 11 letter, it is clear that the summary judgments cannot be upheld on any theory of apparent or ostensible authority. Under the attorney's testimony, there was no reliance on any apparent authority of Rogers in excess of the authority granted by the letter of August 3. See Steen v. Andrews, 1955, 223 Miss. 694, 78 So. 2d 881, 883; ALI Restatement (Second) of Agency § 8, Comment c; 3 Am.Jur.2d, Agency § 75.

■ We conclude that genuine issues of fact remained as to whether Rogers had authority, either actual or apparent, to bind American by his receipt of prepayment for the entire amount of the remaining indebtedness. The summary judgments must therefore be reversed.

## II.

American appears to take a further position that there is another issue to be determined on its merits. That is whether Rogers' conduct and omissions subsequent to his receipt of the check for $68,-659.94, and the facts and circumstances which came to the knowledge or notice of the defendants or their attorneys were such as to put them on notice that Rogers had not advised American of the prepayment, and whether they then can under a duty to so advise American and are liable for any loss proximately resulting from a failure to perform that duty.

■ The law governing such an unusual situation seems to be uncertain. The general rule is that the fact that one realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action. Restatement Torts 2d § 314.[3] There are, however, times and occasions when the relationship of the parties or the particular circumstances may impose upon a party a duty to speak rather than to remain silent in respect of facts within his knowledge and of which another party is ignorant.[4]

■ It is the duty of a person to make to another person, to whom he holds a trust or fiduciary relationship, a full disclosure of any and all material facts within his knowledge, and of which he knows or should know that the other person is ignorant.[5] There are some general expressions in Mississippi decisions involving different factual situations that "The relationship between mortgagor and mortgagee is such that neither shall do anything as respects the trust property which will impair the rights of the other or embarrass the enforcement of those rights." Meyers v. American Oil Co., 1941, 192 Miss. 180, 5 So.2d 218, 220.

---

3. The commentator remarks:
 "The result of the rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown. Such decisions have been condemned by legal writers as revolting to any moral sense, but thus far they remain the law. It appears inevitable that, sooner or later, such extreme cases of morally outrageous and indefensible conduct will arise that there will be further inroads upon the older rule." Restatement Torts 2d § 314, p. 117.

4. See 23 Am.Jur., Fraud and Deceit §§ 78–81; 37 C.J.S. Fraud § 16.

5. See 23 Am.Jur., Fraud and Deceit § 81; 37 C.J.S. Fraud § 16d.

See also Federal Land Bank v. Collom, 1946, 201 Miss. 266, 28 So.2d 126, 127. Nonetheless, with respect to payment of the mortgage debt their relationship may be adversary rather than of a fiduciary character. See 59 C.J.S. Mortgages § 294(b). In any event, the ordinary rule is that payment of the mortgage debt extinguishes the lien of the mortgage regardless of any formal entry of satisfaction. 59 C.J.S. Mortgages § 470b. Thus any fiduciary relationship between the parties may have been terminated by the payment; or it may be that there remained in existence some phase of the relationship between the parties because the transaction between First Federal's attorney and Rogers extended beyond payment of the indebtedness in full, and included surrender of the cancelled note and deed of trust and cancellation or satisfaction of record of the deed of trust; and that transaction was never entirely completed.

 Where the parties deal at arms length, there is no duty of disclosure where the facts are equally within the knowledge of both parties; but if the facts are peculiarly within the knowledge of one party, there may be a duty of disclosure under particular circumstances. See 37 C.J.S., Fraud § 16b; 23 Am.Jur., Fraud and Deceit, § 80.

It is no part of good judicial administration for us, on this appeal, to undertake definitively to state the principles of law to be applied with respect to any acts or omissions of the defendants subsequent to delivery of the check for $68,-659.94. Those principles vary with the particular facts and circumstances which may be developed on a trial on the merits. The foregoing discussion is intended merely to indicate the breadth of the issues to be developed and which the district court may find necessary to determine on a trial on the merits.

The judgments are reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GEWIN, Circuit Judge (dissenting):

I can not agree with the majority decision that the district court erred in granting summary judgment for First Federal Savings and Loan Association because material questions of fact remain to be resolved. As I view the record in this case, the sole function of the district court was to construe, as a matter of law, the letter of August 3rd from American National Insurance Company to Zurich Building, Inc. The district court held that the letter clearly, unequivocally, and unambiguously conferred authority upon Rogers to receive all the payments on the note, including the pre-payment made by First Federal. I believe that decision is unquestionably correct, and therefore I must dissent.

The motion for summary judgment filed by First Federal was not the usual barebones motion for summary judgment. The district court had before it numerous affidavits, depositions, and documentary evidence relating to the question of Rogers' authority. It concluded that none of this evidence altered or varied the clear meaning of the August 3rd letter. The letter of August 11th, while not relied upon by the attorney for First Federal, is but further evidence that the August 3rd letter conferred the necessary authority on Rogers to receive the prepayment. It manifestly indicates that American National meant in its August 3rd letter what the district court concluded it did, and what First Federal believed it did. In addition, the letter clearly indicates that First Federal acted reasonably and prudently in interpreting the earlier letter as it did. The affidavit quoted in the majority opinion does not raise any material question of fact as to the meaning of the August 3rd letter. It is conclusory in nature and amounts to little more than a statement, after the fact, as to what American National usually did in other cases and intended to do with respect to the note in question. At best, therefore, it is a layman's interpretation of the meaning of the August 3rd letter. Regardless of what American National may have intended by its letter of

August 3rd, it is bound by the legal consequences of the language used in that letter. The district court found that it created an apparent authority in Rogers to collect all payments on the note, including the payment made by First Federal in settlement of the loan. That construction is buttressed by the letter of August 11th. There is no factual controversy here; the district court's holding is correct and it should be upheld.

Although, in my view of the case, it is unnecessary to reach the question of whether First Federal was obligated to warn American National of possible irregularities on the part of Agent Rogers, I can not agree with the conclusion of the majority that there is also an open factual issue as to whether First Federal was obligated to prod American National into an examination of the books of its own agent. The short answer is that American National chose Rogers as its agent, and it was its duty to maintain a proper relationship with him to protect its own interests from his misconduct. Indeed, American National owed a duty to those dealing with it through Rogers to protect such persons from the misconduct of its chosen agent. It had selected Rogers and had plainly and forcefully held him out to the public as its agent. Persons dealing with him were told by American National that they were dealing with it. The existence of any fiduciary relationship between American National and First Federal surely obligates American National to exercise due diligence to insure that First Federal would suffer no harm due to the misconduct of American National's agent. To suggest the existence of a duty to warn American National of possible wrongdoing by one of its chosen agents of long standing on the part of an unsuspecting member of the public, who had no part in choosing the agent and who was not in nearly as good a position to discover such misconduct as American National, is to place the shoe on the wrong foot.

Essentially, this is a simple case. The district court, and this Court on review, are only required to examine a clear, unequivocal, direct, and unambiguous instrument to ascertain its meaning. The evidence introduced on the motion for summary judgment was not sufficient to raise any question or doubt as to the obvious and common sense meaning of the August 3 letter. No ambiguity was raised, and no factual conflict as to a material issue was established. The district court resolved the only question before it, a legal one, in a concise, direct, forthright, and correct manner. I agree with that decision. To say the least, it is an ominous decision to conclude otherwise in the fast moving and complex modern day marketplace where people, of necessity, must rely upon the assertions of the principal with respect to the authority they have vested in agents of their own deliberate choosing. This fact is of particular importance in this case where Rogers had been the Mississippi agent of American National for so many years, and whose office was designated in one of the documents in evidence as the office of American National in Jackson, Mississippi.

When all is said and done the district court will be required to do again what it has already done, that is, to determine the meaning of a clear, unambiguous, simple, unequivocal expression in writing. Without hesitancy, restraint, or reservation, I would affirm the summary judgment of the district court against American National.

Rehearing denied; GEWIN, Circuit Judge, dissenting.