Evon STRONG, Olivia Atkinson, Jeanette Bowens, Bobby Bowens and Derek Boyd Plaintiffs

v.

FIRST FAMILY FINANCIAL SERVICES, INC., Associates Corporation of North America, Associates First Capital Corporation, Citigroup, Inc., Citifinancial Credit Company, American Security Insurance Company, Dee Davis, Gail Hood, Brenda Higginbotham and Jimmy Bryan Ricks Defendants

No. CIV.A. 4:01CV163LN.

United States District Court, S.D. Mississippi, Eastern Division.

March 29, 2002.

**538**

Rance N. Ulmer, Rance N. Ulmer, Attorney, Bay Springs, Robert Gordon Methvin, Jr., Robert G. Methvin, Jr., P.C., Birmingham, AL, for Evon Strong, Olivia Atkinson, Julia Bobo, Jeanette Bowens, Bobby Bowens, Derek Boyd, plaintiffs.

Fred Krutz, III, Roland M. Slover, Forman, Perry, Watkins, Krutz & Tardy, Jackson, John R. Chiles, Richard C. Keller, Elizabeth E. Bosquet, Burr & Forman, Birmingham, AL, Robert D. Gholson, Law Offices of Robert D. Gholson, Laurel, Charles E. Griffin, Griffin & Associates, Randy L. Dean, Walter D. Willson, Wells, Marble & Hurst, Jackson, for First Family Financial Services, Inc., Associates Corporation of North America, Associates First Capital Corporation, Citigroup, Inc., Citifinancial Credit Company, American Security Insurance Company, Union Security Life Insurance Company, Dee Davis, Gail Hood, Brenda Higginbotham, Jimmy Bryan Ricks, defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiffs Evon Strong, Olivia Atkinson, Jeannette and Bobby Bowens and Derek Boyd to remand this case to the Circuit Court of Jasper County, Mississippi. Defendants American Security Insurance Company and Union Security Life Insurance Company have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to remand should be denied.

According to their complaint, plaintiffs, all Mississippi residents, obtained loans at various times from defendant First Family Financial Services. In June 2001, they filed suit in the Circuit Court of Jasper County asserting a number of putative state law claims, including breach of fiduciary duties, breach of implied covenants of good faith and fair dealing, fraudulent misrepresentation and/or omission, negligent misrepresentation and/or omission, civil conspiracy, negligence and unconscionability under the Mississippi Uniform Commercial Code, all grounded on allegations that they were wrongfully sold and/or induced to purchase credit life and/or credit disability insurance and/or property insurance in connection with their loans.[1] In addition to suing First Family and its parent corporation, the plaintiffs sued the two nonresident insurance companies that issued the subject insurance policies, American Security Insurance Company and Union Security Life Insurance Company, and they also sued four resident employees of First Family who were alleged to have participated in the respective plaintiffs' loan transactions, as follows:

> Plaintiff Atkinson alleged that in November 1999, she obtained a loan from First Family in connection with which Gail Hood sold her credit life, credit disability and credit property insurance;
>
> Plaintiffs Bowen allege that on March 30, 1992, July 24, 1999 and August 13, 1999, defendant Bryan Ricks sold them credit life insurance; and

---

1. Their specific charges are addressed in more detail, *infra*.

Plaintiff Boyd alleges that on August 26, 1999, defendant Dee Davis sold him credit life and credit disability insurance in connection with a loan from First Family.[2]

The nonresident defendants removed the case on the basis of diversity jurisdiction, contending that plaintiffs fraudulently joined the resident, nondiverse defendants. Following removal, plaintiffs moved to remand, taking the position that they have alleged viable claims against these persons whose joinder is therefore not fraudulent and whose citizenship thus precludes any finding that diversity jurisdiction exists over this cause.

■■■ The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002). Thus, where the defendants charge that a party has been fraudulently joined to defeat removal, "the burden of persuasion is on the one who cries fraudulent joinder," *Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 (5th Cir.2000) (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)); and to sustain that burden, the defendants "must show that there is no reasonable probability of recovery against the joined party or that there has been outright fraud in the pleadings of jurisdictional facts," *id.* "If there is no arguably reasonable basis for believing that liability may be established against the joined party, then remand is appropriate." *Id. See also Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995).

■■■ · In evaluating defendants' assertion of fraudulent joinder, the court must consider all of the factual allegations in the light most favorable to the plaintiff and resolve all of the contested issues of fact in favor of the plaintiff. *See Burden*, 60 F.3d at 217. Normally, in determining fraudulent joinder, the court should refrain from conducting an evidentiary hearing but may pierce the pleadings, utilizing a summary judgment-like procedure, so that even though the complaint may state a claim against the disputed defendants, the case may be removed if the defendants show by evidence outside the pleadings that there is no reasonable basis to predict that plaintiff could establish a claim against the nondiverse defendants. *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 389, 394 (5th Cir.2000); *see also Delgado*, 231 F.3d at 179. That is to say, "although a state court complaint on its face may allege a state law ·claim against an in-state defendant that does not preclude it from being removable (by the non-resident defendant), when filed, if the· plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." *Badon*, 224 F.3d at 390.

In their state court complaint in the case at bar, plaintiffs charge that "[c]ontrary to law, the Defendants required ... credit life insurance, [credit disability] insurance ... and property insurance ... in connection with their loans to Plaintiffs,"[3] which defendants allegedly represented were a

**2.** The court notes that the complaint filed by plaintiffs recites that "[c]ontrary to law, the Defendants required collateral protection insurance, credit life insurance, credit accident and health insurance, accidental death and dismemberment insurance, involuntary unemployment insurance, property insurance, and/or other insurance in connection with their loans to Plaintiffs." However, the complaint they have filed is apparently one that was originally drafted for use in another case by other plaintiffs but which has been modified for use in this and other cases. Thus, the court considers and addresses herein the allegations that are specifically applicable to this case and to these plaintiffs.

**3.** *See supra* note 2.

necessary part of the loan package. Plaintiffs allege that the premiums for these insurance products were "excessive and/or inflated in comparison to other similar insurance products available in the marketplace, but not sold or offered by Defendants," and were "inflated falsely due to undisclosed commissions that Defendants received for selling the insurance." They complain further that defendants sold insurance based upon "total of payments" rather than the amount of the debt; that defendants engaged in insurance packing by packing the amount financed through the sale of insurance products; that defendants then charged exorbitant interest rates on the amount financed; and that defendants charged "[e]xcessively high and/or false points, closing costs, origination fees, and service charges to bloat the loans."

In their count for breach of fiduciary duties,[4] plaintiffs charge that defendants, including the individual defendants, breached their fiduciary duty by failing to obtain adequate insurance at a fair and reasonable price, and by failing to disclose to plaintiffs that defendants received remuneration directly or indirectly for selling the subject insurance products. Similarly, in their counts for fraudulent and negligent misrepresentation and/or omission, they assert that defendants failed to disclose that defendants would financially benefit from the sale of the subject insurance policies, failed to disclose that the insurance products at issue were "grossly overpriced" and in excess of the market rate and that alternative insurance could be obtained at a lower cost, failed to disclose that the premiums would be financed at an excessive interest rate, failed to disclose that the insurance coverage was wholly inadequate, failed to disclose that

plaintiffs were not required to purchase this insurance and misrepresented that plaintiffs were required to purchase the insurance, all of which led plaintiffs to believe that defendants were obtaining and furnishing adequate insurance for them at a fair price without the need for plaintiffs to take further action.

■ Plaintiffs can succeed on their claims for breach of fiduciary duty only if such a duty exists. *See Lowery v. Guaranty Bank and Trust Co.*, 592 So.2d 79, 83 (Miss.1991) (stating that "[t]he existence of a fiduciary duty must be established before a breach of that duty can arise"). Moreover, since silence, in the absence of a duty to speak, is not actionable, plaintiffs' claims for misrepresentation by omission are dependent on the existence of a duty of disclosure, which would arise if a fiduciary relationship existed. *See Chiarella v. U.S.*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980) (stating that "one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'"); *cf. Turnley v. Turnley*, 726 So.2d 1258, 1262 (Miss.Ct.App.1998) (" '[A]s between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and ... his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and ... mere si-

---

4. The court notes that plaintiffs do not appear to have directed their claim of breach of the duty of good faith and fair dealing and their

claim of unconscionability to the resident defendants.

lence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment. . . .") (quoting *Van Zandt v. Van Zandt*, 227 Miss. 528, 86 So.2d 466, 470 (1956)); *American Nat. Ins. Co. of Galveston, Tex. v. Murray*, 383. F.2d 81, 86 (5th Cir.1967) (recognizing that on the part of a fiduciary, there is a duty to make "a full disclosure of any and all material facts within his knowledge, and of which he knows or should know that the other person is ignorant.").

 The Mississippi Supreme Court has repeatedly held that lenders and their borrowers typically are not in a fiduciary relationship, and certainly are not so as a matter of law,[5] although "the relationship between a debtor and creditor may rise to such a level of fiduciary based on the particular facts of the case." *Merchants & Planters Bank of Raymond v. Williamson*, 691 So.2d 398 (Miss.1997); *see also General Motors Acceptance Corp. v. Baymon*, 732 So.2d 262, 270 (Miss.1999) (noting that " '[t]he general rule is that there is no presumption of a fiduciary relationship between a debtor and creditor . . .'," and further observing that "because of the severity of the burdens and penalties that are integral to a fiduciary relationship, the party seeking to prove the existence of the relationship must do so by clear and convincing evidence") (quoting *Peoples Bank & Trust Co. v. Cermack*, 658 So.2d 1352, 1358 (Miss.1995); *First American Nat. Bank of Iuka v. Mitchell*, 359 So.2d 1376, 1380 (Miss.1978)) (noting that generally, the relationship between a debtor and creditor is a contractual one, and "not a confidential or fiduciary one"), *overruled sub nom. on other grounds, C & C Trucking Co. v. Smith*, 612 So.2d 1092 (Miss. 1992). The relationship may rise to such level if " '(1) the activities of the parties go beyond their operating on their own behalf, and the activities for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.' " *Hopewell Enterprises, Inc. v. Trustmark Nat. Bank*, 680 So.2d 812, 816–17 (Miss.1996) (quoting *Carter Equip. Co. v. John Deere Industrial and Equip. Co.*, 681 F.2d 386 (5th Cir.1982)). Otherwise, it is viewed as simply an arms-length business transaction. *See Williamson*, 691 So.2d at 404 (concluding that record was devoid of "evidence that the relationship between Williamson and the Bank was anything other than 'an arms-length business transaction involving a normal debtor-creditor relationship' " in that there

---

5. The court in *Merchants & Planters Bank of Raymond v. Williamson*, 691 So.2d 398 (Miss. 1997), elaborated on its rationale for rejecting "the notion that a fiduciary relationship exists as a matter of law between a mortgagor and mortgagee," stating that this rejection

 is based on sound considerations of law and also on the realities of said relationship. A holding that the [lender/borrower] relationship is, as a matter of law, a fiduciary one would serve to impose fiduciary concepts upon what is, in many cases, a standard contractual relationship between parties with fundamentally different interests.

*Id.* at 404. The court went·on to state that [a] classification of a given relationship as fiduciary as· a matter of law is properly reserved for certain relationships such as that between a guardian and ward or between a trustee and a beneficiary of a trust. In these relationships, one party justifiably places trust and confidence in the other to act in a manner that is consistent with the interests of the party placing said trust and reliance. Clearly, the relationship between the [lender and borrower] is quite different from the aforementioned relationships and is properly entered into and carried out in a manner similar to other contractual relationships: with diligence, caution, and with knowledge of the subject matter of the contract.

*Id.*

were no facts "which would take the relationship between the Bank and Williamson out of the scope of the generally non-fiduciary mortgagor/mortgagee relationship;" "there [was] no evidence that the Bank exercised 'dominion and control over Williamson', nor ... any other facts which would support the conclusion that a fiduciary relationship existed between the parties"); *see also Baymon,* 732 So.2d at 270 (finding no fiduciary relationship in lender context, noting, "There is no evidence in the record that [the lender] created an expectation in Baymon that it would protect her interests, nor that she was lulled into a false sense of security by relying on [the lender].").

In this vein, the Mississippi Supreme Court in *Lowery v. Guaranty Bank and Trust Co.,* 592 So.2d 79, 83 (Miss.1991), stated, generally, that

> "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. Black's Law Dictionary 564 (5th Ed.1979). A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears "on the one side an overmastering influence ·or, on the other, weakness, dependence, or trust, justifiably reposed." *Miner v. Bertasi,* 530 So.2d 168, 170 (Miss.1988); *Matter of Estate of Haney,* 516 So.2d 1359 (Miss. 1987). Additionally, a confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party justifiably imposes special trust and confidence in another, so that the first party relaxes the care and vigilance that he would normally exercise in entering into a transaction with a stranger. *Nicholson v. Ash,* 800 P.2d 1352, 1355 (Colo.Ct.App.1990).

*Lowery,* 592 So.2d at 83. The court then stated that "[i]n credit life insurance cases, a fiduciary relationship between bank and consumer-borrower may be established on the basis of contract, agency, or the reposing of trust and confidence," *id.,* and went on to hold that considering that there had been past dealings between the bank and the Lowerys which might have justified the Lowerys in "rel[ying] on that relationship and plac[ing] trust and confidence in Guaranty Bank to the point of being less vigilant about the coverage of the credit life insurance than they had been in the past," a fact question was presented as to whether a fiduciary relationship, or quasi-fiduciary relationship existed. *Id.* at 85.

■ In the case at bar, plaintiffs allege that a fiduciary relationship arose because defendants purported to obtain insurance on plaintiffs' behalf in connection with plaintiffs' respective loans and plaintiffs thus "placed special trust and confidence in their lender" to obtain adequate insurance at a fair price. But this is nothing more than an assertion that plaintiffs trusted their lender (and by inference, its employees) because it was their lender, which is plainly insufficient under the cited authorities to support finding that a fiduciary relationship existed. *See Deramus v. Jackson Nat. Life Ins. Co.,* 92 F.3d 274, 278 (5th Cir.1996) (examining *Lowery,* and stating that "relative to the creation of a confidential relationship, *Lowery* holds that there must be something about the relationship between the parties which would justifiably create an expectation on the part of one party that the other was protecting the first party from the occurrence of a particular risk; and, moreover, such justifiable reliance must have necessarily caused the first party to be lulled into a false sense of security so that the first party did not protect his own interest as he might have ordinarily"). Hence, there is no reasonable possibility of plaintiffs' recovering on a theory that a fiduciary (or quasi-fiduciary) duty was breached.

In view of their claims for misrepresentation, the question remains whether these defendants might have had a duty of disclosure otherwise, and it appears that perhaps they did. *See First United Bank of Poplarville v. Reid,* 612 So.2d 1131, 1138 (Miss.1992) ("[T]hose who would offer to procure [credit life] insurance and enjoy commissions for their service owe as much candor and good faith as any other insurance agent."). However, the record plainly discloses that plaintiffs were informed that credit life insurance was not required as a condition of their loans, and further, that they were informed as to the terms on which such insurance was offered by the defendant lender. In this regard, it is undisputed that each plaintiff executed a "Combined Note and Security Agreement" which conspicuously states,

### INSURANCE

**Credit Life, Credit Disability Insurance:** Credit Life and Credit Disability Insurance are NOT REQUIRED in connection with this loan and were no factor in the approval of this extension of credit. If you choose to obtain credit insurance through Lender as indicated on the separately signed and dated insurance Notice to Loan Applicant for the original scheduled term of the loan, ... the cost thereof is shown in items 4 & 5 herein and is included in the Amount Financed.

In addition, each executed a separate document entitled **"INSURANCE NOTICE TO LOAN APPLICANT,"** which states:

### READ CAREFULLY BEFORE SIGNING

CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED TO OBTAIN THIS LOAN. If you desire Credit Life Insurance or Credit Life and Credit Disability Insurance, the charge(s) therefore stated below will be added to and included within the Amount Financed and the Insurance covers the Borrower(s) named in the certificate(s) of insurance delivered herewith. Credit Life Insurance is for the originally scheduled term of the loan of 60 months, whichever is less.

The document then sets forth "[t]he premiums for Credit Life and Credit Disability." Directly above the signature line appears the statement,

I/WE HAVE READ THIS NOTICE AND HAVE MADE THE CHOICE BEFORE SIGNING ANY OTHER NOTE OR OTHER PAPER REPRESENTING A LOAN

Finally, the last paragraph of the document, appearing directly below the signature line, informs the borrower that credit life and/or credit disability insurance, if elected, may be cancelled within fifteen days at the borrower's request.

"[A] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract," *Godfrey, Bassett v. Huntington Lumber & Supply Co.,* 584 So.2d 1254, 1257 (Miss.1991), regardless of whether or not he actually read the document. *See Cherry v. Anthony, Gibbs, Sage,* 501 So.2d 416, 419 (Miss.1987) (stating that "knowledge of [the contents of a contract] [will] be imputed to [a party] as a matter of law" even though she did not read the contract before signing it) (citing *Atlas Roofing Mfg. Co., Inc., v. Robinson and Julienne, Inc.,* 279 So.2d 625, 629 (Miss.1973); *see also Warrington v. Dawson,* 798 F.2d 1533, 1544 n. 10 (5th Cir. 1986) ("The 'generally prevailing law' is that 'one is presumed to have read a contract that one signs.'"). The fact that the loan and insurance documents executed by plaintiffs conspicuously and clearly disclose that credit insurance was not required as a condition of plaintiffs' loans precludes any

reasonable possibility of recovery by plaintiffs on their claims against the resident defendants based on allegations that defendants failed to disclose that credit insurance was not required or that they misrepresented that such insurance was required as a condition to obtaining their loans. *Cf. Carter v. Union Security,* (holding that plaintiff's alleged reliance on agent's alleged representation that credit insurance was necessary was, as a matter of law, not reasonable since the uncontroverted evidence demonstrated that the terms of the contract were made available to and read by the insured).

6. Plaintiffs' allegation that the resident defendants are liable for having failed to advise them that the subject insurance was "based upon 'total of payments' in violation of statute," is not well founded. Contrary to plaintiffs' allegation, it is not a violation of statute in Mississippi to calculate the amount of credit insurance on the total of payments. Rather, by statute, this is permissible. *See* Miss. Code Ann. § 83–53–7(1) ("The initial amount of credit life insurance shall not exceed the total amount repayable under the contract of indebtedness."); *see* Miss.Code Ann. § 83–53–7(2) ("The total amount of periodic indemnity payable by credit disability insurance, in the event of disability, . . . shall not exceed the aggregate of the periodic scheduled unpaid installments of indebtedness, and the amount of each periodic indemnity shall not exceed the total amount repayable divided by the number of periodic installments.").

7. Presumably, plaintiffs' claim for *charging* an allegedly excessive interest rate is directed against the lenders, and not the individual defendants, whose liability is proposed to stem from their failure to disclose that the interest rate was excessive. The rates for these plaintiffs' loans are clearly set forth in the loan documents and plaintiffs certainly were free to judge for themselves whether they thought the rates reasonable.

8. Of course, it is recognized in this state that by offering an insurer's credit insurance policy to a borrower, the lender (and its employee) becomes the borrower's agent for purposes of procuring the coverage so offered

Moreover, in addition to disclosing the fact that credit insurance was not required, the loan documents and accompanying insurance documents executed by plaintiffs also set forth the amount of the premiums, the fact that the premium charge was included in the amount financed,[6] and the interest rate at which the loan would be financed.[7] As these matters were disclosed to plaintiffs in the loan papers signed by them, the contents of which they are deemed to have knowledge, plaintiffs have no possibility of recovery on any claim premised on the alleged nondisclosure of this information.[8]

and requested. *See, e.g., Estate of Jackson v. Mississippi Life Ins. Co.,* 755 So.2d 15, 21 (Miss.1999) (holding that since credit life insurance was obtained by lender, "a reasonable, fair-minded juror would almost have to find that [the lender's employee] became [the borrower's agent] for the purpose of procuring it," but also noting that "[i]f a bank employee is authorized to sell credit life insurance on the bank's loans, . . . the employee is an agent for both the insurance company as well as the bank"); *First United Bank of Poplarville v. Reid,* 612 So.2d 1131, 1137 (Miss. 1992) ("An insurance agent owes the duty to his principal to exercise good faith and reasonable diligence to procure insurance on the best terms he can obtain, and any negligence or other breach of duty on his part which defeats the insurance he procures will render him liable for the resulting loss."); *Parnell v. First Savings and Loan Assoc. of Leakesville,* 336 So.2d 764 (Miss.1976) (holding that where lender financed, collected and retained one year's premium on credit life insurance for borrower, it "assumed a contractual obligation to obtain credit life insurance for [such borrower] and to apply the amounts so received to credit life insurance, and . . . it stood in a fiduciary capacity towards [the borrower] to see that the amount so charged, collected and withheld were actually applied to obtaining and purchasing such insurance"). There is no issue in this case of the resident defendants' failure to procure requested credit life or credit disability coverage; the coverage was procured, and for that matter, is not alleged by plaintiffs to have

Nor do plaintiffs have any potential for recovery against these defendants based on their allegation that the insurance sold to them in connection with their loans was "inadequate," for this charge is merely conclusory, and unaccompanied by any factual allegation. *See Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D.Miss.2001) (holding that allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim"). Furthermore, plaintiffs do not allege that the coverage they were provided by the defendant insurers was other than as represented to them by resident defendants and as defined in the certificates of insurance provided to plaintiffs at the time of their loan transactions. In sum, plaintiffs have identified no cognizable basis for imposing liability on the resident defendants either for selling to the plaintiffs insurance that was "inadequate" or for failing to disclose that the insurance coverage was "inadequate."

Additionally, in view of the filed rate doctrine, as recently endorsed and invoked by the Mississippi Supreme Court in *American Bankers Insurance Company v. Wells*, Nos. 603, 604, Dockets 93–7565, 93–7589, 2001 WL 1554028 (Miss. Dec.6, 2001), plaintiffs' claims that the resident defendants failed to procure insurance at a "fair and reasonable" price and that they failed to disclose that premiums for the insurance products offered to plaintiffs were "grossly overpriced" cannot succeed. *See Wells*, 2001 WL 1554028, at *6 (explaining that "[u]nder the filed rate doctrine, any 'filed rate'—that is, a rate approved by the governing regulatory agency—is 'per se reasonable and unassailable in judicial proceedings brought by ratepayers[,]'" and holding that "[a] civil juror, who likely has little, if any, expertise in the area of insurance rates and policies, should not be permitted to reject

and thereupon impose liability based on the rates of a policy which was expressly approved by the Department of Insurance") (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir.1994)).

 For all of the foregoing reasons, the court concludes that defendants have sustained their burden to show that plaintiffs have no possibility of recovery against the resident defendants. However, plaintiffs contend additionally that there is no diversity in any event since First Family is a dissolved Mississippi corporation which should be treated as a Mississippi citizen, and whose citizenship thus destroys diversity. *See* Miss.Code Ann. § 79–4–14.05(b) ("Dissolution of a corporation does not ... [p]revent commencement of a proceeding by or against the corporation in its corporate name[,][or][a]bate or suspend a proceeding pending by or against the corporation on the effective date of dissolution...."). However, defendants submit that First Family did not dissolve, but rather merged with a Delaware corporation, and thus is properly regarded as having Delaware citizenship. The court agrees, and thus concludes that there is diversity jurisdiction in the case. *See* Miss.Code Ann. § 79–4–11.07 (providing that "when a merger becomes effective, the corporation ... that is designated in the plan of merger as the survivor continues[;] ... the separate existence of every corporation ... that is merged into the survivor ceases[;] ... all property owned and every contract right possessed by, each corporation ... that merges into the survivor is vested in the survivor[;] ... [and] all liabilities of each corporation ... that is merged into the survivor are vested in the survivor."); *see also First Family Financial Servs., Inc. v. Bradford*, No. 4:01CV138LN (S.D.Miss. Aug. 23, 2001), and cases cited therein.

been offered or procured on terms other than

the best terms these defendants could offer.

Accordingly, it is ordered that plaintiffs' motion to remand is denied.