**Kathryn WELLS, as Personal Representative and on Behalf of the Heirs at Law of Leslie R. Wells, Deceased Plaintiff**

v.

**RADIATOR SPECIALTY COMPANY, a North Carolina Corporation; United States Steel Corporation, a Delaware Corporation; and Does 1 Through 100, Inclusive Defendants**

**No. 2:04 CV 389 KS JMR.**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Feb. 9, 2006.

Edward L. Pleasants, III, W. Eason Mitchell, Wilbur O. Colom, The Colom Law Firm, Columbus, MS, for Plaintiff.

Carmen R. Toledo, J. Kevin Buster, King & Spalding, Atlanta, GA, Joe Sam Owen, Owen & Galloway, PLLC, Gulfport, MS, James M. Riley, Jr., Coats, Rose, Yale, Ryman & Lee, Houston, TX, Joe E. Basenberg, Hand Arendall, LLC, Mobile, AL, Leonard B. Melvin, Jr., Melvin & Melvin, Laurel, MS, Stephen Lee Thomas, Danielle Daigle Ireland, Bradley, Arant, Rose & White, LLP, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

STARRETT, District Judge.

This matter is before the Court on Motion for Judgment on the Pleadings filed on behalf of Radiator Specialty Company (hereinafter "RSC"), pursuant to Rule 12(c), Federal Rules of Civil Procedure and on a separate Motion to Dismiss pursuant to Rule 12(b)(6) filed on behalf of United States Steel (hereinafter "USS"). The court, having reviewed the motions, the responses, the authorities cited, the briefs of counsel and the pleadings and exhibits on file and being otherwise fully advised in the premises finds as follows;

### FACTUAL BACKGROUND

The plaintiff's decedent worked as a maintenance employee at the Hood Industries facility in Beaumont, Mississippi, from 1968 until 1982. According to the pleadings, he used Liquid Wrench, a product manufactured by RSC, as a part of his duties from 1968 until 1978. Further, the Liquid Wrench contained benzene supplied to RSC by USS.

Plaintiff's decedent was diagnosed with acute myelogenous leukemia (AML) on November 3, 2000. He died from the disease on November 9, 2001. According to the plaintiff, AML is a "signature scientific medical condition that occurs following repeated exposure to benzene and typically develops several years after benzene exposure."

### Procedural Posture

The plaintiff filed her original complaint in this matter alleging the wrongful death of her husband from the AML against several defendants on October 22, 2004. She filed her First Amended Complaint naming only RSC, USS and Doe Defendants 1 through 100 on June 17, 2005. USS was not named a defendant in the original complaint, only in the amended complaint.

Plaintiff's amended complaint makes wrongful death claims against both RSC and USS for the death of her deceased husband based on negligence (Count I); strict liability (Count II—failure to warn; Count III—design defect); fraudulent concealment (Count IV); breach of implied warranties (Count V); and loss of consortium (Count VI).

Defendant RSC has moved for a judgment on the pleadings on Counts I, II, III and V as time-barred. Defendant USS

has moved to dismiss Counts I, II, III and V for the same reason, Count IV as not cognizable under Mississippi law and Count VI as a derivative claim which fails when the plaintiff's other claims do.

## STANDARD OF REVIEW

RSC has moved for dismissal under Rule 12(c) and USS under Rule 12(b)(6). The standard of review is the same under either subsection of Rule 12. *Johnson v. Johnson*, 385 F.3d 503 (5th Cir.2004). In ruling on a 12(b)(6) motion, the Court may not go outside the pleadings, specifically the complaint in this case. "The Rule 12(b)(6) motion ... only tests whether the claim has been adequately stated in the complaint." 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298 (1990).

As the Fifth Circuit has stated, "We may not go outside the pleadings. We accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir.1993)(internal footnotes and citations omitted). *See also, Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994).

Since the 12(b)(6) motion may only test the allegations of the complaint, "a post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment must be used to challenge the failure to state a claim for relief." 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1357 at 300 (1990). However, such a result is only technically correct since subject matter jurisdiction may be raised at any time, either by the court *sua sponte* or by a motion to dismiss. *See Burks v. Texas Co.*, 211 F.2d 443 (5th Cir.1954). Therefore, any motion which challenges the subject matter jurisdiction of the Court would be proper at any time, even up until trial. Rule 12(h)(3), Fed.R.Civ.P. Therefore, while technically a 12(b)(6)/12(c) motion may be made at any time, even after a responsive pleading is filed, the Court still may not consider anything but the well-pleaded allegations of the complaint in ruling on it. If any matters outside the complaint are considered, the motion is converted to one for summary judgment.

## ANALYSIS

### Statute of Limitations

The basis upon which both RSC and USS seek dismissal of Counts I, II, III and V is that they are time-barred. The plaintiff has conceded that her breach of implied warranty claims contained in Count V are, in fact, time-barred. The defendants are entitled to judgment on this claim and it will not be necessary for the court to further address this count.

The decedent was diagnosed with AML on November 3, 2000, and he expired on November 9, 2001. The original wrongful death complaint was filed on October 22, 2004. The Mississippi wrongful death statute, codified at § 11–7–13, does not contain a separate or specific time bar. The parties are in agreement that the applicable statute of limitations for bringing a claim under the wrongful death statute is contained in Miss.Code Ann. § 15–1–49, the residual or general statute of limitations section. Likewise, the limitations period for the underlying claims alleged in Counts I, II and III (the negligence and strict liability claims) are gov-

erned by that same section, which provides

**Actions without prescribed period of limitation; actions involving latent injury or disease**

(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

Miss.Code Ann. § 15–1–49 (Supp.2004).

Subsection 2 of § 15–1–49 codifies the common law "discovery rule" in latent injury claims. Under this subsection, the limitations period does not begin to run until an injured party has discovered, or through reasonable diligence should have discovered, the latent injury, or in this case, the disease. The parties do not disagree on this concept. Where they part company is on the application of the statute to the facts of this case.

RSC contends that the limitations statute runs from the date the decedent was diagnosed with AML, i.e., November 3, 2000. The plaintiff contends for a later date which is not entirely clear from the pleadings and briefs. She contends that she timely filed her original complaint within the prescribed three year limit for wrongful death actions while maintaining that the time-bar runs from the date that the plaintiff discovered or should have discovered not only the disease but also its *cause.*

The plaintiff asserts that she did not discover the *cause* of the disease until after her husband's death after she was alerted to possible occupational hazards through conversations with family members of the decedent's co-workers. The amended complaint states that the plaintiff first suspected "that decedent's leukemia might be occupationally related" in 2003. Plaintiff's First Amended Complaint, ¶ 13. The plaintiff further contends that, at the very least, the date she discovered, or should have discovered, the disease *and its cause* is a jury question creating a genuine issue of material fact.

Defendant USS argues that the three year limitations period of § 15–49–1 runs from the date of decedent's death because this action was brought as one for wrongful death. USS contends that had the decedent survived to file a negligence/strict liability claim of his own, the time-bar would indeed have run from the date of his diagnosis with AML but that the running of the time-bar does not begin until decedent's death because this is a wrongful death action. Regardless of when the time-bar begins to run, USS states that this action is untimely as to it because it was not added as a defendant until the First Amended Complaint was filed in June 2005. The plaintiff argues that the addition of USS as a defendant relates back to the date of the original filing of October 2004.

However, it will not be necessary for the court to address the relation back argument of the plaintiff for the reasons stated hereinafter, the gratuitous, and incorrect, conclusion of USS that the limitations statute does not begin to run until the filing of the wrongful death action notwithstanding. Further, the court is not certain why defendant RSC argued for the application of Mississippi substantive law under a conflict of laws analysis. It has no relevance

to this action. This case is one which, in part, invokes the court's diversity jurisdiction, therefore, the court is *Erie* bound to apply Mississippi law to the extent appropriate. As well, part of the case is alleged to arise under the laws or statutes of the United States, and of course the court is required to appropriately apply such to those claims. Regardless of the "rabbit trails" run by the parties, the court will review the appropriate authorities and resolve this matter accordingly.

■ The court starts first with the proposition that "a wrongful death action, since it is predicated on an underlying tort, is limited by the statute of limitations applicable to the tort resulting in the wrongful death." *Thiroux ex rel. Cruz v. Austin ex rel. Arceneaux,* 749 So.2d 1040, 1042 (Miss.1999). *See also Lee v. Thompson,* 859 So.2d 981 (Miss.2003)("wrongful death action is a derivative action brought by the beneficiaries who are subject to all of the defenses that would have been available against the decedent"). Simply put, the wrongful death action accrues to the *beneficiaries* of the decedent upon his death and the time-bar for the filing of a wrongful death action begins, for the *beneficiaries,* at that point. However, the accrual of a wrongful death action does not toll the limitations period for the tort which caused the death. Therefore, under the facts of this case, the time-bar commences on the date the plaintiff, or her decedent, discovered, or by reasonable diligence should have discovered, the injury.

RSC argues that this date was November 3, 2000, when the decedent was diagnosed with AML. The plaintiff argues that it was when the plaintiff discovered both the disease and its *cause.* While she is not clear on when this date was, she asserts that it was within three years of the filing of the original complaint in October 2004.

There has been some confusion in the application of subsection 2 of § 15-1-49 because often there is no date certain diagnosis of a malady which ultimately results in the death, incapacitation or some injury, permanent or otherwise. Here, however, Mr. Wells was diagnosed with AML on November 3, 2000. He succumbed to the disease on November 9, 2001. It is this specific disease which the plaintiff now contends was caused by these defendants' product which resulted in Mr. Wells' death.

■ The question presented to this court is when did this cause of action accrue—on the date of diagnosis of the disease or the discovery of its cause? The Mississippi Supreme Court has held that "[a] cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested." *Owens–Illinois, Inc. v. Edwards,* 573 So.2d 704, 706 (Miss.1990)(citing *Rankin v. Mark,* 238 Miss. 858, 120 So.2d 435 (1960); *Aultman v. Kelly,* 236 Miss. 1, 109 So.2d 344 (1959); *Walley v. Hunt,* 212 Miss. 294, 54 So.2d 393 (1951); and *Forman v. Mississippi Publishers Corp.,* 195 Miss. 90, 14 So.2d 344 (1943)). The *Owens–Illinois* court then stated

> The cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease. In the case at bar, that date is August 26, 1986, the date Charles Edwards was diagnosed with asbestosis. Though the cause of the injury and the causative relationship between the injury and the injurious act or product may also be ascertainable on this date, these factors are not applicable under § 15–1–49(2)
> . . . .

*Id.* at 709.

Affirming its holding in *Owens–Illinois,* the Mississippi court once again held that

the accrual of a latent disease cause of action occurs when the injured party is diagnosed with the disease. *See Schiro v. American Tobacco Co.,* 611 So.2d 962, 965 (Miss.1992).

There is no dispute as to when Mr. Wells was diagnosed with AML, November 3, 2000. The plaintiff's argument that the causative relationship of the disease and the decedent's alleged occupational exposure to benzene was not known at that time cannot carry the day in light of *Owens–Illinois'* holding that causative knowledge is not applicable under § 15–1–49.

The Mississippi Legislature has established a three year window of opportunity for the discovery of any relationship between an injury and its cause by way of § 15–49–1. The Legislature has determined that three years is an adequate time to discover a relationship between an injury and its cause and that suit beyond that period should not be allowed. That is peculiarly a legislative function upon which courts should not intrude.

Therefore, the defendants are entitled to judgment on Counts I, II and III of the plaintiff's First Amended Complaint as time-barred to the extent that any causal relationship between decedent's disease and the product was not fraudulently concealed in conformity with Count IV of the amended complaint, which the court will next address.

### Fraudulent Concealment

■ The plaintiff alleges fraudulent concealment on the part of the defendants by their alleged failure to inform or warn the decedent of the toxic properties of the product. This cause of action overlaps considerably with Counts I and II, the negligent and strict liability failure to warn claims. Only the defendant USS has moved to dismiss this claim, but the court's ruling on the time-bar of the other claims makes the viability of this claim doubtful.

Therefore, the court will address the claim as to both defendants to prevent a waste of judicial resources. The court notes that the plaintiff did not respond to this portion of USS's motion to dismiss.

■ USS contends that it owed no duty to the decedent to disclose the properties of its component part of the product and thus the plaintiff's cause of action must fail. It is settled that "[a]n omission constitutes fraud only if the speaker owed the hearer a duty of disclosure." *Mooneyham v. Progressive Gulf Ins. Co.,* 910 So.2d 1223, 1227 (Miss.App.2005)(citing *Strong v. First Family Financial Services.,* Inc., 202 F.Supp.2d 536, 540 (S.D.Miss.2002)). "The duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Id.* (citing *Smith v. Tower Loan of Mississippi, Inc.,* 216 F.R.D. 338, 358 (S.D.Miss.2003)) (quoting *Chiarella v. U.S.,* 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980)).

"Moreover, since silence, in the absence of a duty to speak, is not actionable, plaintiffs' claims for misrepresentation by omission are dependent on the existence of a duty of disclosure, which would arise if a fiduciary relationship existed." *Strong,* 202 F.Supp.2d at 540 (citing *Chiarella v. U.S.,* 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980) (stating that "one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.' ")).

" 'Fiduciary relationship' is a very broad term embracing both technical fiduciary

relations and those informal relations which exist wherever one person trusts in or relies upon another. Black's Law Dictionary 564 (5th Ed.1979). A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears 'on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed.' " *Strong*, 202 F.Supp.2d at 542, (quoting *Lowery v. Guaranty Bank and Trust Co.*, 592 So.2d 79, 83 (Miss.1991))(citing *Miner v. Bertasi*, 530 So.2d 168, 170 (Miss.1988); *Matter of Estate of Haney*, 516 So.2d 1359 (Miss.1987)).

The plaintiff has not pled any type of confidential or fiduciary relationship which would require either of these defendants to disclose the toxic properties of their products, the absence of which would give rise to a cause of action. Clearly, the duty to disclose is encompassed in the plaintiff's failure to warn claims which the court has found time-barred. There was no independent duty of disclosure owed to the plaintiff or her decedent which was breached by these defendants by fraudulent concealment.

### Loss of Consortium

USS also moves to dismiss Count VI of the First Amended Complaint, the plaintiff's loss of consortium claim, on the basis that it is derivative of the decedent's other claims which the court has determined should be dismissed. Under Mississippi law, loss of consortium claims are indeed derivative in nature and parties making such claims "stand in the shoes of the injured third-party, subject to all defenses that would have been available against the injured person." *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 342 (Miss.2004)(citing *Choctaw, Inc. v. Wichner*, 521 So.2d 878, 881 (Miss. 1988)). Since the court has found that the underlying claims claim should be dismissed, the same fate befalls the loss of consortium claim.

IT IS THEREFORE ORDERED AND ADJUDGED that defendant Radiator Specialty Company's Motion to Dismiss [# 41] is Granted and the Plaintiff's First Amended Complaint is Dismissed with prejudice as to this defendant.

IT IS FURTHER ORDERED AND ADJUDGED that the defendant United States Steel's Motion to Dismiss [# 56] is Granted and the Plaintiff's First Amended Complaint is Dismissed with prejudice as to this defendant.

IT IS FURTHER ORDERED AND ADJUDGED that any other pending motions are dismissed as moot.

A separate judgment shall be entered herein in accordance with rule 58, Federal Rules of Civil Procedure.