# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00751-SCT

*LISA EDMONDS AND LARRY EDMONDS*

*v.*

*EDWARD A. WILLIAMSON, INDIVIDUALLY*
*AND EDWARD A. WILLIAMSON, P.A., MICHAEL*
*MILLER, GEORGE W. HEALY, IV AND GEORGE*
*W. HEALY, IV AND ASSOCIATES*[1]

| | |
|---|---|
| DATE OF JUDGMENT: | 03/28/2007 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN J. MUELLER |
| | JOSEPH WOOD HUTCHINSON, III |
| ATTORNEYS FOR APPELLEES: | JOHN BENTON CLARK |
| | BRANDI N. SMITH |
| | WILLIAM T. MAY |
| | WILLIAM B. CARTER |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 06/25/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., LAMAR AND KITCHENS, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case involves a dispute between the plaintiffs, Lisa Edmonds ("Edmonds") and

Larry Edmonds (together, the "Edmondses"), and the defendants, all of whom are attorneys,

---

[1] George W. Healy, IV and George W. Healy, IV and Associates are not in fact parties to this action as they were never joined and no separate cause of action was ever pursued against them.  However, the parties have designated them as parties on appeal and George W. Healy, IV has filed an appellate brief with this Court.

Edward Williamson ("Williamson"), Michael Miller ("Miller"), and George W. Healy, IV ("Healy"). The plaintiffs filed suit in Kemper County Circuit Court, asserting claims of legal malpractice against Williamson and Miller. The trial court granted summary judgment in favor of Williamson and Miller. Thereafter, the plaintiffs appealed to this Court. The plaintiffs also appeal from an order entered by the trial court regarding the plaintiffs' dispute with Healy about their case file.

**FACTS**

¶2. The underlying dispute in this case arises out of the Phen-Fen products liability litigation in ***Williams v. American Home Products Corporation***, Civil Action No. 2000-207, in Holmes County Circuit Court. Lisa Edmonds was one of the claimants from Mississippi who was involved in this litigation. She retained Williamson to represent her in connection with the Phen-Fen litigation, entering into a representation agreement (the "Representation Agreement") with Williamson and his firm, Edward A. Williamson, P.A., on November 17, 2000. The Representation Agreement set out the attorneys' fees for the litigation, which increased as the litigation progressed through various stages. The Representation Agreement states, in relevant part:

> COMPENSATION: In the event of any recovery had by, settlement obtained for, or payment made to the client(s) in connection with the above referred to claim or right of action, EDWARD A. WILLIAMSON, shall be entitled to and shall be paid a percentage of the gross proceeds in accord with the following schedule:
> a. In the event of settlement prior to filing suit, the completion of mediation, or the initiation of arbitration . . . 33 1/3%
> b. In the event settlement is obtained after suit is filed, mediation is successfully completed, or arbitration is initiated, but before the time allowed for discovery, final pre-trial hearing or commencement of trial preparation, whichever is earlier . . . 40%

2

c. In the event settlement is obtained after suit is filed, and after time permitted for discovery, final pre-trial hearing or the commencement of trial preparation, whichever is earlier . . . 45%

d. In the event that an appeal is taken by or on behalf of Client or any Defendant . . . 50%

¶3. After a series of mediations and negotiations, Williamson, Miller, and Edward Blackmon ("Blackmon"), a Mississippi attorney, were able to reach a settlement agreement with American Home Products ("AHP") after trial proceedings had begun for the Phen-Fen matter. The agreement is memorialized in a letter, dated April 24, 2001, from Helene Madonick, counsel for AHP, to Williamson, Miller, and Blackmon. The letter agreement stated in part that AHP would pay $55,000,000 to the Mississippi claimants to settle all their claims and that, in exchange, Williamson, Miller, and Blackmon would provide AHP with signed releases from each claimant. Thereafter, by order of the Holmes County Circuit Court, a Qualified Settlement Fund ("QSF") was established on May 15, 2001. SunTrust Bank was designated to manage the QSF.

¶4. During the course of the negotiations between AHP and Williamson, Miller, and Blackmon, there developed a dispute between Edmonds and Williamson over whether Edmonds had authorized Williamson to settle her claims for $1,500,000 gross or $1,500,000 net. The dispute was resolved and, ultimately, the Edmondses received $1,504,319.77 net.[2] In order to receive the settlement proceeds, the Edmondses signed a Confidential Release, Indemnity and Assignment with AHP on May 5, 2001.

---

[2] The Edmondses also received a check from SunTrust Bank for $14,242.96 in interest.

3

¶5.     On May 9, 2001, Edmonds and Williamson entered into an agreement (the "Agreement") stating that Edmonds would pay Williamson attorneys' fees in the amount of 45% of the gross settlement proceeds. This Agreement was signed by both Williamson and Edmonds and witnessed by Glinda "Kookie" Bowles, Donna Herrington, and Linda Holley. Also on May 9, 2001, Edmonds signed an acknowledgment (the "Acknowledgment") stating that there would be "very substantial" expenses resulting from the Phen-Fen litigation. The Acknowledgment further stated that "[t]hree percent of the gross recovery for expenses ordered to be deducted from each settlement by the multi-district litigation authority" (the "MDL fee") would be deducted from her settlement proceeds.

¶6.     Sometime after signing the Agreement and the Acknowledgment, Edmonds became unhappy with the fact that Williamson was charging her attorneys' fees in the amount of 45% and that the MDL fee had been deducted from her settlement proceeds. The record includes correspondence between Edmonds and Williamson illustrating Edmonds' position regarding fees and expenses. On July 15, 2002, the Edmondses filed a complaint in Kemper County Circuit Court against Williamson and Edward A. Williamson, P.A. (together, the "Williamson Defendants"). In their complaint, the Edmondses alleged, in relevant part, that Williamson wrongly charged Edmonds attorneys' fees in the amount of 45% and that Williamson wrongly allowed the MDL fee to be deducted. The Edmondses claimed that Williamson wrongly charged her the attorneys' fees because she was not a named plaintiff in the *Williams* matter. They also asserted that Williamson wrongly allowed the MDL fee to be deducted because "[t]here is nothing in Ms. Edmonds' contract with Mr. Williamson which authorizes deducting this 3% . . . Ms. Edmonds has not seen any court order which

4

authorizes deducting this 3% . . . and it is not clear how the 3% was calculated or why Mr. Williamson feels that the 3% should be deducted from Ms. Edmonds' share of the gross recovery." The Edmondses argued that by, inter alia, charging Edmonds excessive fees, Williamson "breached his duty of care, breached his contractual obligations, or breached his duty of loyalty (fiduciary duty)."

¶7. Williamson subsequently filed an answer, and the parties proceeded to engage in extensive discovery. The Edmondses subsequently amended their complaint twice to specify a damages amount and to assert Larry Edmonds' claims against the Williamson Defendants and to add Miller as a defendant. The Edmondses also filed a separate complaint against Miller on March 11, 2004. On February 26, 2003, Williamson filed a motion to dismiss or transfer, which the trial court denied on April 11, 2003. An interlocutory appeal was taken, and this Court affirmed the trial court's decision on August 12, 2004. *Williamson v. Edmonds*, 880 So. 2d 310 (Miss. 2004). Following this Court's decision, the parties continued to engage in discovery. On October 7, 2004, the Edmondses filed a motion to consolidate the cases against Williamson and Miller, which the trial court granted on October 13, 2004.

¶8. On August 16, 2005, the Williamson Defendants filed a motion for summary judgment arguing that Edmonds was contractually bound to pay the attorneys' fees and to allow the MDL fee to be deducted and that her claims were barred by waiver and estoppel and accord and satisfaction. The Williamson Defendants also asserted that Larry Edmonds' claims were meritless because Larry was not Williamson's client. Miller joined the motion for summary judgment on August 17, 2005. The Edmondses filed a response in opposition

to summary judgment on August 26, 2005, claiming that the documents Edmonds signed do not constitute an enforceable contract and that, even if they do, they do not bar the Edmondses' claims.

¶9.     Meanwhile, on September 26, 2005, the Edmondses' attorney, Healy, filed a motion to withdraw, which the trial court granted on October 6, 2005, following a hearing on the matter. The trial court granted the Edmondses 120 days to retain substitute counsel. The Edmondses were unable to retain substitute counsel within 120 days and sought and were granted additional time to do so. On March 30, 2006, the Edmondses' new counsel filed a notice of substitution. In the meantime, on January 30, 2006, the Edmondses filed a motion to stay proceedings in this matter because of a dispute with Healy over their case file. The Edmondses claimed that Healy was required to give them their case file in its entirety, without charging the Edmondses for copying costs. Healy responded by filing a motion to determine file production and a response to the Edmondses' motion to stay. Healy argued that the Edmondses had been given full access to their case file and to the copy machine at Healy's law office. He further contended that the Edmondses had "most if not the entire file." He added that the Edmondses had come to his law office on numerous times, sometimes spending eight to ten hours per day at his office reviewing and copying documents, and that on many occasions, they stayed overnight at a hotel or on Healy's personal boat. On March 30, 2006, the Edmondses filed a motion to compel delivery of the case file. On July 31, 2006, the trial court entered an order addressing the dispute over the Edmondses' case file, stating:

> The Court does not believe that [Mississippi Rule of Professional Conduct 1.16(d)] requires the former attorney to copy a client file for the client, nor does it require the attorney to totally turn over the file in which other clients have an interest. Therefore, this Court finds that the entire client file shall be made available to the Edmonds' [sic] for inspection. Thereafter, the Edmunds' [sic] or their representative may copy as much or as little of the file as they wish at their expense. Further, the Edmonds [sic] are entitled to the return of any original papers and property they delivered to Mr. Healy and he may copy these items at his expense if he wishes to retain a copy.

¶10. On November 16, 2006, Miller's counsel sent a letter to one of the Edmondses' new attorneys, John J. Mueller ("Mueller"), suggesting six potential dates for the hearing on the motion for summary judgment. Mueller responded by letter on November 27, 2006, objecting to the setting of a hearing on the motion for summary judgment, but stating that January 26, 2007 would be the best date for the hearing, which the Edmondses' new local counsel, Joseph W. Hutchinson, III ("Hutchinson"), would attend. The hearing for the motion for summary judgment was then set for January 26, 2007. On the morning of the hearing, Mueller faxed to the trial court a motion to continue the hearing because Mueller and the Edmondses were unable to reach Hutchinson to confirm his attendance at the hearing and because, as he stated in his letter of November 27, 2006, to Miller's counsel, Mueller had a conflict. At the hearing, Williamson and Miller were present with counsel and the Edmondses and their counsel were absent. The trial court denied the Edmondses' motion to continue the hearing as untimely filed. The Williamson Defendants then presented arguments regarding their motion for summary judgment. At the conclusion of the arguments, the trial court took the matter under advisement and, on March 19, 2007, the trial court granted summary judgment and entered a final judgment of dismissal on March 29, 2007. Thereafter, the Edmondses timely filed a notice of appeal.

7

¶11. The Edmondses appeal from both the trial court's grant of summary judgment and its order regarding the motion to compel.

## I. Whether the Trial Court Erred in Granting Summary Judgment.

¶12. This Court reviews a trial court's grant of summary judgment de novo. *See, e.g., United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 962 (Miss. 2008) (citing *Germany v. Denbury Onshore, LLC*, 984 So. 2d 270, 275 (Miss. 2008)). When deciding to grant or deny summary judgment, a court must review the record before it and take all the evidence in the light most favorable to the non-moving party. *Martin*, 984 So. 2d at 962 (citing *Denbury Onshore, LLC*, 984 So. 2d at 275). The trial court's decision to grant summary judgment will be affirmed if the record before the court shows that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. *Martin*, 984 So. 2d at 962 (citing *Denbury Onshore, LLC*, 984 So. 2d at 275).

### A. The Edmondses' Claims Regarding Waiver, Estoppel, Release, and Accord and Satisfaction

¶13. The Edmondses argue that the trial court erred in granting summary judgment because their claims were not barred by waiver, estoppel, release, or accord and satisfaction. The first four issues raised on appeal are set out as follows:

**Issue No. 1:** **Did the Edmondses waive the claims of lawyer malpractice, breach of contract, and breach of fiduciary duty they have asserted against Williamson?**

**Issue No. 2:** **Are the Edmondses estopped from prosecuting the claims of lawyer malpractice, breach of contract, and breach of fiduciary duty they have asserted against Williamson?**

**Issue No. 3:** **By signing the acknowledgment and separate agreement, did the Edmondses release the claims of lawyer malpractice,**

8

**breach of contract, and breach of fiduciary duty they have asserted against Williamson?**

**Issue No. 4:** **By signing the acknowledgment and separate agreement, did the Edmondses enter into an accord and satisfaction with Williamson?**

¶14.    The Edmondses argue that the trial court erred in finding that they waived their claims against Williamson by accepting the settlement proceeds from AHP.[3] They also contend that the trial court erred in finding that they were estopped from asserting their claims against Williamson "[i]n the same circumstances as the trial court found that the Edmondses waived [their] claims." They further assert that the trial court erred in finding that, by signing the Agreement and the Acknowledgment, the Edmondses had signed a release.[4] Lastly, they argue that the trial court erred in finding that, by signing the Agreement and the Acknowledgment, the Edmondses had entered into an accord and satisfaction with Williamson.[5]

¶15.    The trial court granted summary judgment on several grounds. First, the trial court found that the Agreement and the Acknowledgment that Edmonds signed were enforceable

---

[3] Although the Edmondses make this argument on appeal, the trial court did not find that the Edmondses waived their claims against Williamson by accepting the settlement proceeds. The trial court found that, by signing the Agreement and the Acknowledgment and thereby agreeing to pay the attorneys' fees in exchange for her settlement, Edmonds had waived her right to her claims against Williamson.

[4] Although the Edmondses make this argument on appeal, the trial court did not make a separate finding that Edmonds signed a release when she signed the Agreement and the Acknowledgment.

[5] Although the Edmondses assert these claims on behalf of both Lisa and Larry Edmonds and argue that the trial court made findings as to both Lisa and Larry Edmonds, the trial court made findings only as to Edmonds based on waiver, estoppel, and accord and satisfaction. The trial court made a separate finding as to Larry Edmonds' ability to assert claims against Williamson.

9

contracts and that Edmonds was, therefore, bound to the terms of those agreements. As stated above, after agreeing to settle with AHP and signing a Confidential Release, Indemnity and Assignment with AHP on May 5, 2001, Edmonds entered into two agreements with Williamson on May 9, 2001. She signed the Agreement, which explicitly states, in relevant part: "The Williamson Law Firm will see to it that LISA EDMONDS receives $1,500,000.00 after applicable expenses as per the acknowledgment and attorneys' fees in the amount of FORTY-FIVE PERCENT (45%)." Edmonds also signed the Acknowledgment, which explicitly states, in relevant part, that "[t]hree percent of the gross recovery for expenses ordered to be deducted from each settlement by the multi-district litigation authority" would be deducted from the settlement proceeds.

¶16. Second, the trial court granted summary judgment on the ground that Edmonds' claims were barred because of waiver and equitable estoppel because she signed the Agreement and the Acknowledgment, which set out the terms of her acceptance of the settlement proceeds and then accepted the settlement proceeds. Third, the trial court granted summary judgment on the ground that the Agreement and the Acknowledgment satisfied the elements of accord and satisfaction, thus barring Edmonds' claims against Williamson.

¶17. Although the Edmondses raise arguments regarding waiver, estoppel, release, and accord and satisfaction on appeal, they never challenge the trial court's first ground for granting summary judgment. The Edmondses do not contest the fact that "the Acknowledgment and Agreement are valid and enforceable contracts, and . . . the Plaintiff must abide by the terms contained in the agreements." The Edmondses also do not dispute the fact that Edmonds signed these documents and do not otherwise question the trial court's

10

conclusion that Edmonds is, therefore, bound by these documents. Thus, even if the Edmondses were to prevail on their waiver, estoppel, release, and accord and satisfaction claims, the trial court's decision to grant summary judgment would still stand on the ground that Edmonds is bound by the terms of the Agreement and the Acknowledgment, both of which the trial court found to be enforceable. Because the Edmondses do not raise the issue of the validity of these agreements for appellate review, this Court need not address it on the merits. *See **Trinity Mission Health & Rehab of Holly Springs, LLC v. Lawrence***, No. 2008-CA-00027-SCT, 2009 Miss. LEXIS 67, at * 13 (Miss. Feb. 12, 2009) (citing **Hood ex rel. State Tobacco Litigation v. State**, 958 So. 2d 790, 815 n.17 (Miss. 2007); **Collins v. Tallahatchie County**, 876 So. 2d 284, 286 n.5 (Miss. 2004)). Therefore, this Court finds that, regardless of the merits of the Edmondses' first four claims, the trial court's grant of summary judgment must be affirmed on the basis of its analysis of the enforceability of the agreements, which is not challenged by the Edmondses.

### B. Larry Edmonds' Claims Against Defendants

¶18. The Edmondses also claim that Larry Edmonds may pursue claims for malpractice and breach of fiduciary duty against the Defendants. They argue that Larry "may be able to establish" a lawyer-client relationship with Williamson despite never signing a representation agreement, that Larry "may also be able to establish . . . breach of a duty" because the record is unclear as to whether Williamson advised Larry concerning a loss-of-consortium claim, and that Larry "may be able to prove that he suffered damages." Williamson argues that Larry has no right to recover against him because he never entered into a representation agreement with Williamson and never asserted a claim against AHP.

11

¶19. This Court has held that claims of breach of fiduciary duty fall under claims of legal malpractice. *See, e.g.*, ***Wilbourn v. Stennett, Wilkinson & Ward***, 687 So. 2d 1205, 1215 (Miss. 1996) (citing ***Hartford Accident & Indem. Co. v. Foster***, 528 So. 2d 255, 285 (Miss. 1988)) ("[L]egal malpractice may be a violation of the standard of care of exercising the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, or the breach of a fiduciary duty."). This Court has stated that, to recover in a legal malpractice action, the plaintiff must prove by a preponderance of the evidence: 1) the existence of a lawyer-client relationship; 2) negligence on the part of the lawyer in handling the client's affairs; and 3) proximate cause of the injury. *See,* e.g., ***Lane v. Oustalet***, 873 So. 2d 92, 98-99 (Miss. 2004) (citations omitted); ***Wilbourn***, 687 So. 2d at 1215 (citations omitted); ***Hickox v. Holleman***, 502 So. 2d 626, 633 (Miss. 1987).

¶20. This Court finds that the record supports the trial court's conclusion that Larry Edmonds cannot establish legal malpractice claims against Williamson or Miller. First, we address the issue of whether a lawyer-client relationship existed. In Williamson's answer to the Edmondses' first amended complaint, Williamson stated:

> Larry Edmonds accepted and used the services of defendants and associated attorneys knowing that compensation was expected, so that a contract was implied for the payment of attorneys [sic] fees. It is admitted that defendants undertook to and did represent both Mrs. Edmonds and Mr. Edmonds and undertook to settle Mr. Edmonds' claim in connection with the underlying case as well [as] Mrs. Edmonds' claim, both with the knowledge and consent of Mrs. Edmonds and Mr. Edmonds.

Williamson further stated:

> It is denied that the written contract of representation does not govern the relationship of Mr. Williamson and Mr. Edmonds. A contract was implied for the payment of attorneys' fees by Mr. Williamson [sic]. Under the

12

circumstances, since the claim of Mr. Edmonds was derived from the claim of Mrs. Edmonds, the implied contract was identical to the written contract of representation for the claim of Mrs. Edmonds, from which it was derivative. Further, Mr. Edmonds on or about May 5, 2001 or shortly thereafter, for a valuable consideration, executed a 'Confidential Release, Indemnity and Assignment,' in which he affirmed that 'No attorneys have a pecuniary interest in the settlement proceeds allocated to Claimant, other than the Claimant's counsel, (emphasis added),' and further acknowledged that he had had the opportunity to confer with counsel about the sum to be allocated to him in settlement and related matters.

Therefore, based solely on this admission by Williamson, this Court finds that there was a lawyer-client relationship between Larry Edmonds and Williamson.

¶21. Nevertheless, Larry Edmonds' claims must fail because, even though a lawyer-client relationship may have existed and even if Larry Edmonds can prove that Williamson breached a duty owed to him, he cannot prove that he suffered any damages. On appeal, the Edmondses argue that "[i]f Larry Edmonds establishes this [sic] his loss-of-consortium claim had a value, because Larry Edmonds received nothing on his claim, and the bar of the statute-of-limitations has now attached to this claim, Larry Edmonds may be able to establish that Williamson's breach of duty proximately damaged Larry Edmonds." Thus, Larry Edmonds alleges that he suffered damages because he did not receive any money for his loss-of-consortium claim. However, the record clearly reflects that SunTrust sent a check to the Edmondses, made out to both Lisa and Larry Edmonds, in the amount of $1,504,319.77. The record also reflects that both Lisa and Larry Edmonds endorsed the back of the check. In consideration for this settlement amount, Larry Edmonds signed the Confidential Release, Indemnity, and Assignment with AHP.

13

¶22. Because the record clearly demonstrates that Larry Edmonds received money for his loss-of-consortium claim – the only claim he could have had, under the circumstances – taking the evidence in the light most favorable to the Edmondses, this Court finds that he cannot prove that he suffered damages. Since he cannot prove that he suffered damages, there is no genuine issue of material fact as to his claims against Williamson or Miller for legal malpractice, which must, as a matter of law, fail. After a de novo review of the record, this Court finds that the trial court properly found that Larry may not maintain legal malpractice claims against Williamson and Miller.

## II. The Dispute Over the Case File

¶23. The Edmondses also raise four issues related to their dispute with Healy over their case file. The issues raised on appeal related to the Edmondses' case file are set out as follows:

**Issue No. 6:** **Do the Edmondses own the "case file" Healy created concerning *Edmonds v. Williamson*, or does Healy, the lawyer, own the "case file?"**

**Issue No. 7:** **If the Edmondses own the "case file" and if Healy wants to retain a copy of the file, do the Edmonds [sic] have to pay for the copy for Healy's benefit or does Healy have to pay for the copy?**

**Issue No. 8:** **If the Edmondses own the "case file," does Healy have a duty to provide all of the contents of the "case file" to the Edmondses or may Healy withhold "work product" or other documents?**

**Issue No. 9:** **During the course of representing the Edmondses in *Edmonds v. Williamson*, Healy provided to the Edmondses copies of documents that form a part of the "case file." If the Edmondses own the "case file," does Healy have a duty to provide the Edmondses with a document if, in the course of the representation of the Edmondses, Healy previously provided the Edmondses with a copy of the document?**

14

¶24. As stated above, in deciding the Edmondses' motion to compel delivery of the case file, the trial court ordered Healy to make the Edmondses' case file available to them in its entirety for copying at the Edmondses' expense, to return any original papers or property that the Edmondses delivered to Healy, and to pay costs associated with copying any of the Edmondses' original papers or property if he wished to retain a copy.

¶25. On appeal, the Edmondses argue that the trial court erred by entering this order because, as clients, their case file is their property. They further argue that the trial court erred by requiring them to bear the copying costs. They also maintain that Healy may not withhold any part of their case file, such as attorney work product. Lastly, they argue that Healy must produce their entire case file even if he previously gave them copies of portions of the documents in their case file.

¶26. Healy argues that the trial court's order should be affirmed and that it was a reasonable, ethical, and practical solution to the dispute between himself and the Edmondses. Healy states that he does not have a separate client file for the Edmondses and that there is a single, unified case file for multiple clients. He therefore argues that he cannot practically or ethically turn over this entire unified file to the Edmondses. Healy claims that the duty of a withdrawing attorney to return the entire case file to the client is not absolute. He further maintains that it is ethical for an attorney to charge his client for copying costs.

¶27. The last two arguments raised by the Edmondses (issues eight and nine) are not properly before this Court at this time. While issues six and seven challenge the propriety of the trial court's order, which this Court may review, issues eight and nine do not identify errors made by the trial court in its decision regarding the case file. Furthermore, there is no

15

evidence in the record, and the Edmondses do not allege on appeal, that Healy has attempted to violate the trial court's order by preventing them from accessing all of the documents in their case file, including attorney work product and documents previously copied and given to the Edmondses. Thus, these issues are premature and preemptive in nature, and thus not ripe for review. *Cf. **Thoms v. Thoms***, 928 So. 2d 852, 855 (Miss. 2006) (finding that appellant's claim that requiring him to submit to genetic testing violated his constitutional rights was premature and not ripe for review because appellant had not yet been required to undergo genetic testing); ***Tinnon v. Martin***, 716 So. 2d 604, 613 (Miss. 1998) (finding that defendants' claim that Mississippi Rule of Evidence 503(f) is unconstitutional was not ripe for review because no trial level proceedings in the case had yet been held pursuant to Rule 503(f), but addressing the issue for reasons of judicial economy). Therefore, this Court does not address issues eight and nine.

¶28.    We now turn to issues six and seven, which assert that the trial court erred in its order regarding the Edmondses' case file. "The trial court's grant or denial of a motion to compel is subject to an abuse of discretion standard of review on appeal." ***Elec. Data Sys. Corp. v. Miss. Div. of Medicaid***, 853 So. 2d 1192, 1209 (Miss. 2003) (citing ***Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.***, 635 So. 2d 1357, 1363 (Miss. 1994)). Mississippi Rule of Professional Conduct 1.16(d) clearly states:

> Upon termination of representation, a lawyer shall take steps *to the extent reasonably practicable* to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

16

Miss. Rules of Prof'l Conduct R. 1.16(d) (emphasis added).

¶29.    In this case, the record indicates that the Edmondses have copies of a large portion, if not all, of their case file. Healy represents that, following his withdrawal, the Edmondses made as many as ten trips to his law office to review their file and to make copies of documents at Healy's expense. At times the Edmondses stayed overnight in a hotel and, on some occasions, on Healy's personal boat. Healy represents that the Edmondses also kept copies of all file materials that they considered important during the course of the litigation, that Healy provided the Edmondses copies of all of the depositions taken in their case, and that the Edmondses were in attendance at most of these depositions. The Edmondses do not dispute the fact that they copied the documents they wanted at Healy's office on various occasions at his expense, that they are in possession of much of their case file already, or that they attended most of the depositions taken in their case. Also, Edmonds admitted at the hearing for Healy's motion to withdraw that most of the documents in the case file were duplicates.[6]

---

[6] The following exchange took place at the hearing on the motion to withdraw:

| | |
|---|---|
| BY THE COURT: | [Healy] has – in general language, he has an ethical obligation to turn over to you your entire, quote, file, whatever that may consist of. And I know George knows what his obligations are to a client from whom he withdraws from representation. And I'm sure he will do that, furnish your new attorney all of his file material. I would assume that is no problem. |
| BY MR. HEALY: | It will take a little while, I think, Your Honor. And Ms. Edmonds knows that I think we have well over 20,000 documents. |
| BY MRS. EDMONDS: | But most of them are duplicates. |

¶30. Given the facts of this case, this Court finds that the trial court acted within its discretion when ordering Healy to provide the Edmondses access to the entire file for them to copy at their expense and when ordering Healy to return the original papers and property belonging to the Edmondses and to pay for the copying costs if he wished to retain a copy of their original papers or property. Under the circumstances, the trial court's order comports with Rule 1.16(d) in that it requires Healy to do what is "reasonably practicable" in order to protect the Edmondses' interest. *See* Miss. Rules of Prof'l Conduct R. 1.16(d). Therefore, the trial court's order regarding the case file will be affirmed.

## CONCLUSION

¶31. In their appeal, the Edmondses do not challenge the trial court's conclusion that Edmonds is bound by the terms of the Agreement and the Acknowledgment. In addition, this Court finds that the trial court properly determined that Larry Edmonds could not maintain his claims against Williamson and Miller. Therefore, the trial court's summary judgment is affirmed. Based on the facts of this case and Mississippi Rule of Professional Conduct 1.16(d), this Court finds that the trial court did not abuse its discretion in deciding the Edmondses' motion to compel delivery of the case file. Therefore, the trial court's order deciding the Edmondses' motion to compel is also affirmed.

¶32. **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, AND PIERCE, JJ., CONCUR. DICKINSON, J., NOT PARTICIPATING.**