# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01474-SCT

*GAIL SAUL, FOR AND ON BEHALF OF ALL
WRONGFUL DEATH HEIRS OF RAYMOND L.
COOK, AND RAYMOND COOK, INDIVIDUALLY,
BY AND THROUGH GAIL SAUL, HIS PERSONAL
REPRESENTATIVE*

*v.*

*SOUTH CENTRAL REGIONAL MEDICAL
CENTER, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2008 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | ROBIN L. ROBERTS |
| ATTORNEYS FOR APPELLEE: | RICHARD O. BURSON GRAYSON LACEY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED IN PART; REVERSED AND RENDERED IN PART - 01/07/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. Gail Saul brought suit, pursuant to the Mississippi Tort Claims Act, against South Central Regional Medical Center for the alleged wrongful death of her father, Raymond Cook. The Jones County Circuit Court granted the hospital's motion to dismiss the wrongful-death suit against it, finding that the one-year statute of limitations barred Saul's

claims. Finding that Saul's "wrongful-death" claims were timely brought, and that the discovery rule applied to Saul's "survival-type" claims, requiring additional evaluation by the trial court, we reverse and remand.

**FACTS**

¶2. On November 15, 2005, Raymond Cook's gall bladder was surgically removed at South Central Regional Medical Center ("SCRMC"). Shortly thereafter, while still hospitalized, Cook developed an internal abdominal bleed. On November 19, 2005, he suffered a heart attack, lost consciousness, and was placed on a ventilator. Cook never regained consciousness, and on December 2, 2005, Cook was removed from life support. He died on December 6, 2005.

¶3. On December 5, 2006, Dale Cook, one of Raymond Cook's children, sent the hospital a notice-of-claim letter pursuant to the Mississippi Tort Claims Act ("MTCA"). The letter named Gail Saul, Dale Cook, and Dewayne Cook as Raymond Cook's children. The letter alleged that "[t]he nursing staff at [SCRMC] failed to recognized that Mr. Cook needed [blood] volume replacements [following surgery] . . . ." The hospital received the letter on December 6, 2006, the one-year anniversary of Cook's death.

¶4. On June 11, 2007, Saul, on behalf of the wrongful-death plaintiffs and as Cook's personal representative, filed suit for Cook's alleged wrongful death, against SCRMC and three physicians. According to the complaint, SCRMC staff was negligent in its post-operative care of Cook, and its negligence proximately caused Cook's death. The hospital moved for dismissal under Mississippi Rule of Civil Procedure 12(b)(6), arguing that the one-year statute of limitations had expired before it received the notice-of-claim letter. In

2

the alternative, the hospital argued that dismissal was warranted because the notice-of-claim letter did not meet the statutory requirements.

¶5. Following a brief hearing on the motion, the trial court took the matter under advisement. By order dated August 20, 2008, the trial court dismissed all of Saul's claims against the hospital without prejudice. The judge found that Saul's claims against SCRMC were "based on the Hospital's alleged failure to recognize that Mr. Cook needed blood volume replacement between the dates of November 15, 2005, and November 19, 2005." Thus, the judge reasoned that the statute of limitations began to run no later than November 19, 2005, the last date Cook was conscious. Because SCRMC received the notice of claim on December 6, 2006, more than one year after that date, the trial court found that Saul's claims were barred by the expiration of the one-year statute of limitations.[1] The trial court certified the judgment as final under Mississippi Rule of Civil Procedure 54(b).[2]

## STANDARD OF REVIEW

---

[1] In dismissing Saul's claims, the trial court considered matters outside Saul's complaint and SCRMC's answer. Thus, the trial court should have converted SCRMC's Rule 12(b)(6) motion into a motion for summary judgment and dealt with it accordingly under Rule 56. Miss. R. Civ. P. 12(b). However, Saul has not asserted as an error the trial court's failure to convert the Rule 12(b)(6) motion, so we do not address it here. *See Edmonds v. Williamson*, 13 So. 3d 1283, 1289 (Miss. 2009) (citing *Trinity Mission Health & Rehab of Holly Springs, LLC v. Lawrence*, No. 2008-CA-00027-SCT, ___ So.3d ___, ___, 2009 WL 331629, *13 (Miss. Feb. 12, 2009); *In re Hood ex rel. State Tobacco Litigation*, 958 So. 2d 790, 815 n.17 (Miss. 2007); *Collins v. Tallahatchie County*, 876 So. 2d 284, 286 n.5 (Miss. 2004)).

[2] Only the hospital has been dismissed. According to SCRMC's motion to dismiss, the physicians were not hospital employees, and the MTCA's one-year statute of limitations does not apply to the claims against these individual defendants.

¶6.    This Court applies a de novo standard of review when examining a trial court's grant or denial of a motion to dismiss.  *Burleson v. Lathem*, 968 So. 2d 930, 932 (Miss. 2007) (citing *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1275 (Miss. 2006); *Park on Lakeland Drive, Inc. v. Spence,* 941 So. 2d 203, 206 (Miss. 2006); *McLendon v. State*, 945 So. 2d 372, 382 (Miss. 2006); *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005)). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id.* (quoting *Scaggs*, 931 So. 2d at 1275).

## DISCUSSION

¶7.    The trial court dismissed all of Saul's claims against SCRMC as untimely, relying primarily on this Court's decision in *Caves v. Yarbrough*, 2007 WL 3197504 (Miss. 2007) ("*Caves I*"), holding that the discovery rule did not apply to MTCA cases.  However, on rehearing, we withdrew *Caves I* and issued our final opinion in the case, holding that the discovery rule does apply to actions brought under the MTCA.  *Caves v. Yarbrough*, 991 So. 2d 142, 155 (Miss. 2008) (citing *Barnes v. Singing River Hosp.*, 733 So. 2d 199, 205-06 (Miss. 1999)).  The final *Caves* decision was not issued until September 25, 2008, slightly more than a month after the trial court dismissed Saul's claims against SCRMC.  On appeal, Saul argues that the discovery rule tolled the statute of limitations for her wrongful-death action until she obtained her father's medical records.

I.    **Discovery Rule**

4

¶8.     Saul's claims against SCRMC, a state-sponsored hospital, are subject to a one-year limitations period under the MTCA. Miss. Code Ann. § 11-46-11(3) (Rev. 2002). Our decision in *Caves* reaffirmed the application of the discovery rule in wrongful-death actions predicated on allegations of medical malpractice and brought under the MTCA. *Caves*, 991 So. 2d at 155. We followed the "judicially created" discovery rule we originally had incorporated into the MTCA in *Barnes v. Singing River Hospital*, 733 So. 2d 199 (Miss. 1999), finding that "justice is best served by applying a discovery standard to such cases." *Caves*, 991 So. 2d at 154-55 (quoting *Barnes*, 733 So. 2d at 205-06). Thus, we held in *Caves* that "the limitations period for MTCA claims does not begin to run until all the elements of a tort exist," and we concluded that "[t]he operative question . . . is whether statutory notice was provided within a year next following the earliest date [the decedent] (*or his personal representative*), by exercise of reasonable diligence, should have known of the injury and the acts or omission which caused them." *Caves*, 991 So. 2d at 155-56 (emphasis added). We further held in *Caves* that "the finder of fact . . . must decide when those requirements are satisfied." *Id.* at 155.

¶9.     *Caves* also "explained" that the wrongful-death statute allows an action which includes not only the beneficiaries' "wrongful-death" claims, such as loss of consortium, society, and companionship, but also the decedent's own pre-death "survival-type" claims, such as claims for his or her personal injury, property damage, and medical expenses. *Caves*, 991 So. 2d at 148-49.[3] "The statute of limitations for ["wrongful-death"] claim[s], however,

---

[3] When we say "wrongful-death" claims, with quotation marks, we are referring to the beneficiaries' claims, brought within the wrongful-death action, for loss of society, etc.

5

[can] not begin to run until, at the earliest, . . . the date of death, and the date [the wrongful-death claimant]'s damages accrued." *Univ. of Miss. Med. Ctr. v. McGee*, 999 So. 2d 837, 840 (Miss. 2008).[4] Since SCRMC received the notice-of-claim letter on the one-year anniversary of Cook's death, Saul's "wrongful-death" claims were timely brought, and we need not address the application of the discovery rule to those claims. Thus, we reverse and render the trial court's dismissal of Saul's "wrongful-death" claims against SCRMC.

¶10.    However, applying the discovery rule to the facts of this case, we are unable to determine whether Saul's "survival-type" claims were timely brought. Cook's injuries resulted from gall bladder surgery on November 15, 2005. Cook lost consciousness on November 19, 2005, and he did not regain consciousness before he died on December 6. Thus, Cook was conscious for approximately four days after his surgery, and he may have known about his injuries during that time. However, Cook's injuries were mostly internal and could be characterized as "severe postoperative complications," which is how the trial court labeled them. The question then becomes, pursuant to the "judicially-created" MTCA discovery rule, whether Cook knew or, in the exercise of reasonable diligence, should have known "the act or omission which caused [his injuries]" *Caves*, 991 So. 2d at 155.[5]

---

When referring to the entire lawsuit, we say *wrongful-death action* or *wrongful-death suit*, without quotation marks.

[4] To the extent our decision in *Jenkins v. Pensacola Health Trust, Inc.*, 933 So. 2d 923 (Miss. 2006), implies otherwise, we clarify now that the so-called "wrongful-death" claims included in the wrongful-death action cannot accrue, and the statute of limitations for those claims cannot begin to run, until death.

[5] Saul is Cook's personal representative, so her knowledge could be operative as well. *Caves*, 991 So. 2d at 156. But her knowledge, if any, of SCRMC's alleged negligence was immaterial until Cook died, because she could not have "stepped into Cook's shoes" until

¶11. Based on the scant record before us, we are unable to answer that question, so we remand this cause to the trial court so that the finder of fact may do so. If the fact-finder determines that Cook did discover, or should have discovered, SCRMC's allegedly negligent act or omission before he died, then Saul's "survival-type" claims against SCRMC were untimely because SCRMC received the notice-of-claim letter exactly one year after Cook's death. However, if Cook did not discover these elements, then all of Saul's claims were timely brought.

## II.     Notice of Claim

¶12. Pursuant to Mississippi Code Section 11-46-11(1), a potential plaintiff must provide the governmental entity ninety days' written notice before filing suit. Miss. Code Ann. § 11-46-11(1) (Rev. 2002). Subsection (2) of Section 11-46-11 provides the "seven required categories of information which must be included" in the notice of claim. Miss. Code Ann. § 11-46-11(2) (Rev. 2002); *Parker v. Harrison County Bd. of Supervisors*, 987 So. 2d 435, 439 (Miss. 2008) (quoting *S. Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1257-58 (Miss. 2006)). Specifically, Section 11-46-11(2) provides that:

> Every notice of claim . . . shall be in writing, and . . . shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making

then. *Id.* at 148. Thus, December 6, 2005, was the earliest date Saul's "discovery" of SCRMC's alleged negligence could have triggered the running of the one-year statute of limitations. Were we to apply the discovery rule to Saul's knowledge alone, therefore, we would conclude that all of Saul's claims were timely brought because SCRMC received the notice-of-claim letter on December 6, 2006, exactly one year from that date.

the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. § 11-46-11(2) (Rev. 2002).

¶13. According to SCRMC, even if Saul's action is not barred by the statute of limitations, the case should be dismissed because the notice-of-claim letter was insufficient. Although the written notice identified Saul as one of Cook's surviving children, it did not give her address. Instead, the notice-of-claim letter gave the address of Dale Cook, because Dale sent the notice. Thus, SCRMC asserts that notice was insufficient because it did not identify Saul's residence. We disagree.

¶14. The written notice-of-claim letter sent by Dale Cook contained a statement of the facts upon which the claim was based, including the circumstances which brought about Raymond Cook's injuries, and the time, place, and extent of those injuries, including his alleged wrongful death. The notice also included the names of all persons known to be involved, including Saul, Dale Cook, Dewayne Cook, the doctor who performed the surgery, and the allegedly negligent hospital and nursing staff. The letter also specified the amount of money damages sought by Saul and the Cooks. Finally, the letter gave the residence address of Dale Cook, one of the persons making the claim and the person who sent the notice. Therefore, we find that the notice-of-claim letter complied fully with the requirements of Section 11-46-11(2). Miss. Code Ann. § 11-46-11(2) (Rev. 2002); *Parker*, 987 So. 2d at 439.

## CONCLUSION

¶15. Saul's "wrongful-death" claims against SCRMC were timely brought, so we reverse and render the Jones County Circuit Court's dismissal of those claims. However, applying the "judicially-created" MTCA discovery rule to this case, the record before us does not

8

indicate whether, before he died, Cook "discovered" the act or omission by SCRMC which allegedly caused his injuries. Whether he did or not, and hence, whether Saul's "survival-type" claims were timely brought, must be decided by the fact-finder. Therefore, we reverse the Jones County Circuit Court's dismissal of Saul's "survival-type" claims against South Central Regional Medical Center and remand this cause to that court for further proceedings consistent with this opinion.

¶16.    **REVERSED AND REMANDED IN PART; REVERSED AND RENDERED IN PART.**

**CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PERICE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

**KITCHENS, JUSTICE, CONCURRING IN PART:**

¶17.    For more than 150 years, the rule in Mississippi was simple: the statue of limitations for claims filed pursuant to the wrongful death statute could not begin to run until death. Yet, beginning with *Jenkins v. Pensacola Health Trust, Inc.*, 933 So. 2d 923 (Miss. 2006), this Court embarked upon a curious and confusing course that has drastically changed and unduly complicated this plain and simple rule, and we have yet to settle on a controlling rule of law.

¶18.    Today's majority opinion adds to the mix yet another befuddling decision that will further confound the bench and the bar. While greatly respecting the views of my colleagues in the majority, I write separately to explain why I believe the wiser course would be found in a U-turn back onto the well-marked course we followed during the 19th, 20th, and early 21st Centuries.

9

¶19.    The clear, established law in Mississippi was that the statute of limitations for all claims brought pursuant to the wrongful death statute could not begin to run until the date of the decedent's death. *See* **Gentry v. Wallace**, 606 So. 2d 1117, 1120 (Miss. 1992), *overruled in part by* **Jenkins v. Pensacola Health Trust, Inc.**, 933 So. 2d 923 (Miss. 2006). In 2006, the Court forsook its longstanding precedent, and in **Jenkins v. Pensacola Health Trust, Inc.**, 933 So. 2d 923, with only five justices participating in the decision, the Court reasoned that the statute of limitations begins to run on the date of the injury, not the date of death. Not long after **Jenkins**, this Court decided **Caves v. Yarborough**, 2007 WL 3197504 (Miss. 2007), holding that, in wrongful death actions involving governmental entities, not only did the statute of limitations begin to run on the date of the underlying injury, but that the statutory discovery rule for medical negligence cases, Mississippi Code Section 15-1-36(1) (Rev. 2003), is inapplicable to such claims.

¶20.    Bound by these decisions, the trial judge in the instant case granted SCRMC's motion to dismiss. The judge reasoned that, because this Court had adjudicated the date of injury to be controlling, and not the date of death, the statute of limitations had begun to run no later than November 19, 2005, the last date Mr. Cook was conscious. Because SCRMC received the notice of claim on December 6, 2006, the one-year anniversary of Mr. Cook's death, Saul's claims were held to be barred by the expiration of the statute of limitations.

¶21.    Under **Jenkins** and the Court's first decision in **Caves**, the trial court would have been correct in dismissing Saul's claims. However, subsequent to deciding those two cases, this Court continued to tinker with the law. On September 25, 2008, the Court withdrew the original **Caves** opinion and rightly held that the discovery rule does apply to claims brought

10

under the Mississippi Tort Claims Act (MTCA). *Caves v. Yarborough*, 991 So. 2d 142 (Miss. 2008). In addition, however, the Court declared that actions brought under the wrongful death statute could encompass several sorts of claims, and the statute of limitations for each type of claim could be triggered by different kinds of events. *Id.* at 148-51. Now, instead of the statute of limitations' beginning to run on the date of death, as in *Gentry*, or on the date of the injury, as in *Jenkins*, the Court has determined that both the date of death and the date of injury could apply. *Caves*, 991 So. 2d at 150.

¶22. On appeal, Saul urges this Court to return to the pre-*Jenkins* rule, and she makes a sound and compelling argument, most notably that nothing in Mississippi's 150-year history in this area of law supports these recent decisions. This state's first wrongful death statute provided a statute of limitations of "one year after *the death* of such deceased person." Miss. Code Ch. 61, art. 48 (1857) (emphasis added). In 1908, the legislature removed the limitations provision, and the Code's general, six-year limitations period applied. *Arender v. Smith County Hosp.*, 431 So. 2d 491, 492 (Miss. 1983). Although the time period was shortened by the legislature from six years to three years in 1989, the pertinent language in this catch-all provision remained the same: "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49(1) (Rev. 2003).

¶23. Despite the 1908 legislative removal of the express limitations language from the wrongful death statute, this Court steadfastly recognized and held that the statute of limitations cannot begin to run until the decedent's death. *Gentry*, 606 So. 2d at 1121 (citing *Smith v. McComb Infirmary Ass'n*, 196 So. 2d 91 (Miss. 1967); *Pickens v. Ill. Cent. R. Co.*,

11

92 Miss. 210, 45 So. 868 (1908); ***Foster v. Yazoo & MS Valley R. Co.***, 72 Miss. 886, 18 So. 380 (1895)). The logic was that a wrongful death action is different from other kinds of personal injury actions, and is meant to compensate the statutory beneficiaries of the decedent for certain damages stemming from his or her demise, when caused by the act or omission of another. ***Id.*** at 1119-20. Because the claim does not come into existence until there is a death, the date of death, quite logically, was judicially deemed to be the earliest time that the statute of limitations could begin to run. ***Id.*** at 1121.

¶24. Thus, actions brought under the wrongful death statute are distinguishable from those actions brought pursuant to the survival statute. The survival statute, now codified at Mississippi Code Section 91-7-233, allows executors or administrators to pursue any claim which the decedent could have maintained for himself had he lived. Miss. Code Ann. § 91-7-233 (Rev. 2004). Such claims would be personal to the deceased, claims which did not cause his or her death. The wrongful death statute, on the other hand, allows the beneficiaries to recover for damages caused by those personal torts which did cause death. *See **In Re Estate of England***, 846 So. 2d 1060, 1068 (Miss. Ct. App. 2003) ("When the same wrongful conduct causes both personal injury and death, at the instant of death, the recovery for the personal injury is embraced by the 'one suit' for wrongful death and is not actionable by the estate under the survival statute.") As ***Gentry*** explained, "while a personal injury case enables an injured party to recover damages for the injuries he has sustained, a wrongful death action is intended to compensate the heirs of the deceased for losses stemming from the death of the injured party." ***Id.*** at 1120 (citing ***Sheets v. Craco, Inc.***, 292 N.W.2d 62, 67 (Mo. 1980)).

¶25.    In *Thiroux v. Austin*, 749 So. 2d 1040 (Miss. 1999), this Court modified the applicable limitations period.  Noting that the wrongful death statute itself did not contain its own statute of limitations, this Court held that such actions were therefore "limited by the statute of limitation applicable to the tort resulting in the wrongful death."  *Id.* at 1042.  For example, if the wrongful death was caused by an intentional tort such as assault, the one-year statute of limitations specified by Section 15-1-35 would govern.  *Id.*  While *Thiroux* changed the length of the limitations period for wrongful death actions involving certain torts, it did not alter the long-held rule that only death could initiate the ticking of the clock.

¶26.    However, in *Jenkins v. Pensacola Health Trust, Inc.*, 933 So. 2d 923, this Court overruled *Gentry*, marking a substantial departure from this state's ancient rule.  The *Jenkins* majority read *Thiroux*'s holding that wrongful death actions are "limited by the statute of limitation applicable to the tort resulting in the wrongful death" to mean that the statute of limitations for wrongful death actions begins to run, not at the date of death, but on the date the underlying tort occurred.  *Jenkins*, 933 So. 2d at 926.  This was an unfortunate and calamitous misinterpretation.  In *Thiroux*, 749 So. 2d at 1042, the Court simply had held that the limitations period is *governed* by that of the underlying tort.  This means that the limitations period is the same as the one that applies to the underlying tort.  It did not hold, as *Jenkins* mistakenly concluded, that the statute of limitations *begins to run* at the time of the underlying tort.  Therefore, it is *Jenkins* that is out of line with *Thiroux*, and not *Gentry*.[6]

_____

[6]The *Jenkins* opinion also relied on *Lee v. Thompson*, 859 So. 2d 981 (Miss. 2003), *Wells v. Radiator Specialty Co.*, 413 F. Supp. 2d 778 (S.D. Miss. 2006), and *Beck v. Koppers, Inc.*, 2005 WL 2715910 (N.D. Miss 2005), but these cases do not hold that the statute of limitations for wrongful death actions begins to run on the date of the wrongful act.

¶27. But this new rule would not last long. In ***Caves v. Yarborough***, 991 So. 2d 142, as in the present case, this Court was asked to determine when the statute of limitations for a wrongful death claim brought against an MTCA defendant begins to run. The Court noted that the MTCA provides that all actions, "shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based." ***Id.*** at 147 (quoting Miss. Code Ann. § 11-46-11(3)). Finding this language ambiguous, the ***Caves*** Court looked to other language in the same statute which referenced "the time at which the cause of action accrued." ***Id.*** (quoting Miss. Code Ann. § 11-46-11(4)). The Court then determined that the statute of limitations for claims brought against MTCA defendants "begins to run when all the elements of a tort, or cause of action, are present." ***Id.***

---

In ***Lee***, 859 So. 2d at 982-83, the death and the underlying tort occurred on the same date, so there was no question when the limitations period began to run. This Court simply held that because the underlying tort was murder, deemed an intentional tort by the Court, the one-year limitations period for so-called intentional torts would apply. ***Id.*** at 990. As for the federal cases, ***Wells***, 413 F. Supp. 2d 778, and ***Beck***, 2005 WL 2715910, the district courts were examining the issue of the discovery rule as it applied to latent injury or disease, and neither case stands for the proposition that the wrongful death statute begins to run on the date of the underlying tort.

Furthermore, on the same day that ***Jenkins*** was decided, this Court issued ***Proli v. Hathorn***, 928 So. 2d 169 (Miss. 2006), which unmistakably found that the statute of limitations for a wrongful death action begins to run on the date of death and not on the date of injury. In ***Proli***, the patient was injured on May 2, 2002, but did not die until May 18, 2002. ***Id.*** at 170. This Court plainly said, "[h]ere, the statute of limitations began to run on May 18, 2002," the date of death. ***Id.*** at 175.

For an in-depth discussion of ***Jenkins*** and the history of the Mississippi wrongful death statute, see Patrick J. Schepens, Comment, *"I'm Not Dead Yet!": An Analysis of the Recent Supreme Court of Mississippi's Wrongful Death Jurisprudence*, 27 Miss. C. L. Rev. 235 (2007-2008).

¶28. Prior to *Jenkins*, it had been clear that claims brought under the wrongful death statute could not accrue, and the cause of action was not vested, until the alleged victim's death. But, with *Jenkins* as precedent, the *Caves* majority was compelled to look elsewhere for guidance. Relying on a Louisiana Supreme Court decision interpreting the Louisiana wrongful death statute, *Caves* held that the Mississippi wrongful death statute encompassed several different types of claims. *Caves* further determined that the time the limitations period began to run was determined by the type of claim:

> To summarize, the Mississippi wrongful-death statute, despite the Legislature's assigned nomenclature, encompasses all claims – including survival claims which could have been brought by the decedent, wrongful-death claims, estate claims, and other claims – resulting from a tort which proximately caused a death. And where death is not an immediate result of the tort, the limitation periods for the various kinds of claims may not begin to run at the same time.

*Id.* at 149-50.

¶29. As one studies the *Caves* opinion, it is unclear exactly what event might trigger the running of the limitations period for a particular claim. This Court attempted to clarify the rule in *University of Mississippi Medical Center v. McGee*, 999 So. 2d 837 (Miss. 2008). In *McGee*, the decedent underwent a hysterectomy on September 1, 2004. *Id.* at 839. When she returned to the hospital on September 7, 2004, it was discovered that a sponge had been left in her abdomen during surgery. *Id.* She died on December 19, 2004, and the hospital received a notice-of-claim letter on November 28, 2005. *Id.* This was within one year of the date of her death, but not within a year of the date the sponge was discovered. The question was which of these events triggered the running of the statute of limitations. According to the Court, *Caves* held that there were essentially two types of claims that could be brought

15

under the wrongful death statute: wrongful death claims (those personal to the statutory beneficiaries) and survival claims (those personal to the decedent). *Id.* at 840. The "survival" claims were time-barred because the statute of limitations for those claims began to run on September 7, 2004, the date the sponge was discovered. *Id.* The "wrongful death" claims were not time-barred because the statute of limitations for these claims could not begin to run until December 19, 2004, the date of death. *Id.* Thus, according to *McGee*, the limitations period for "survival" claims begins to run on the date of the injury or its discovery, while the limitations period for "wrongful death" claims begins to run on the date of death.

¶30. Yet, never before, not even in *Jenkins*, had this Court made such a distinction between different types of claims brought pursuant to the wrongful death statute. Indeed, this Court had rejected similar arguments, holding that there could be only one statutory wrongful death claim. For example, in *Wilks v. American Tobacco Company*, 680 So. 2d 839 (Miss. 1996), the wrongful death heirs claimed that the decedent had died as a result of smoking cigarettes manufactured by the defendant. The jury found that death was unrelated to smoking. *Id.* at 840. On appeal, the claimants argued that they still should be entitled to recover damages for the lung problems the decedent suffered during his lifetime as a result of smoking. *Id.* The Court held that because the injuries were unrelated to death, recovery was appropriate only under the survival statute, Mississippi Code Section 91-7-233, and not the wrongful death statute. *Id.* at 843 (citing *Berryhill v. Nichols*, 171 Miss. 769, 158 So. 470, 471 (1935)).

16

¶31. Put another way, "[w]hen the same wrongful conduct causes both personal injury and death, at the instant of death, the recovery for the personal injury is embraced by the 'one suit' for wrongful death and is not actionable by the estate under the survival statute." *England*, 846 So. 2d at 1068 (Miss. Ct. App. 2003) (citing *Edward Hines Yellow Pine Trustees v. Stewart*, 135 Miss. 331, 100 So. 12, 14 (1924)). This is a succinct and straightforward statement of Mississippi's sensible, workable, and time-tested rule on this subject. As there is but one cause of action under the wrongful death statute, the statute of limitations can be triggered only by a single event: the expiration of the decedent's life.

¶32. Nothing is more definite or more easily defined than death. Since the first enactment of the wrongful death statute, the earliest event that could initiate the ticking of the statute of limitations clock was death. That the statute provides for recovery of different types of damages does not change this fundamental precept. *Caves* misinterpreted the statute, wrongly equating different types of damages with different types of claims. While such an interpretation may apply in other states, such as Louisiana, where the wrongful death statute is based on a survival theory, it is inapplicable in Mississippi. In Mississippi, the wrongful death statute "creates a new cause of action that accrues at death in favor of the heirs listed in the statute." *England*, 846 So. 2d at 1066 (citing *Gentry*, 606 So. 2d at 1119; *Byars v. Austin*, 218 So. 2d 11, 15 (Miss. 1969)).

¶33. Simply put, *Jenkins*, *Caves*, and *McGee* were wrongly decided, and the statute of limitations for the single cause of action that may be brought pursuant to the wrongful death statute cannot begin to run until the date of death. In the present case, the date of death was December 6, 2004. Because the hospital received its notice of claim on the one-year

17

anniversary of Mr. Cook's death, and because the statute of limitations was tolled until Saul filed her complaint, her claims are not time-barred.

**GRAVES, P.J., JOINS THIS OPINION**.